BOLIN, Judge.
From judgment in favor of William T. Martin and against Melvin Weaver and his liability insurer in the sum of $15,314.03 for personal injuries and special damages received by plaintiff allegedly caused by Weaver’s negligent operation of an automobile in the City of Shreveport, Louisiana, defendants appeal. Plaintiff has answered the appeal and asked for an increase in the award.
Since the district judge did not assign written reasons for his judgment, we shall recite the facts as we understand them. Immediately preceding the accident, Martin, an electrician 33 years of age, was riding his Harley-Davidson motorcycle north on Southern Avenue when he stopped for a traffic light to change from red to green. After the light changed to green he turned left at the intersection of St. Vincent and Southern and proceeded west along St. Vincent Avenue. A short distance from the traffic light a double railroad track crosses St. Vincent at an elevation of approximately four feet and from the tracks west there is a slight decline. In order to safely cross these tracks Martin slowed the motorcycle to approximately 15 miles per hour and then continued his westward travel on St. Vincent at a normal rate of speed. On the north side of St. Vincent Avenue a T-intersection is formed by Sam-ford Street some 250 feet west of the railroad crossing. Plaintiff testified he could see from the railroad tracks past the intersection with Samford Street since it was daylight and the weather was clear and dry.
The accident was allegedly caused by a vehicle being driven by defendant Weaver east on St. Vincent, or in the opposite direction from Martin’s motorcycle. Defendant was traveling immediately behind another automobile which continued past the intersection of Samford and St. Vincent, but Weaver turned left at Samford in order to proceed north. There were no traffic signals at this intersection. Weaver testified when he began his left turn he could see east all the way to the railroad crossing which was in excess of 300 feet from the point where he began his turn. He stated he saw no one coming but as he had almost completed his left turn the motorcycle suddenly loomed in front of him and he accelerated his speed to get out of the way. He alleged the accident was caused by the excessive speed of Martin.
Martin, on the contrary, contends at the time of the accident he was driving approximately 36 miles per hour, but in no event was he driving faster than 35 to 40 miles per hour. The speed limit at that point is 35 miles per hour. His motor *746 cycle has four forward gears and he stated he had only reached the third forward gear when he observed defendant commencing a left turn in front of him.
Martin applied the brakes to the rear wheel of his motorcycle and skidded some distance and then made an effort to turn his motorcycle on its side in order to slide into the car with the motorcycle cushioning the blow. The motorcycle apparently never struck the car but went behind it causing Martin to fall from the vehicle and be severely injured. The vehicle then came to rest some distance away with the motor still running. It is uncon-tradicted that Martin went over to his motorcycle, and with the aid of some gentlemen standing nearby, righted the vehicle and cut the motor off.
In addition to the two drivers, the only other eyewitness was an employee of a service station located at the intersection of Samford and St. Vincent Avenue. His testimony adds little to that of the parties inasmuch as he only saw the motorcycle at the moment it and Martin parted company. The report of the police officer, who investigated the accident, was introduced by stipulation. A motorcycle expert was called by plaintiff to testify as to stopping distances at certain speeds and the length of skidmarks caused by sudden braking of a motorcycle. This evidence, viewed in the light of the surrounding circumstances and taken in conjunction with plaintiff’s testimony convinces us of the correctness of plaintiff’s version of the accident.
The only question on appeal is one of fact since the law is well settled and not in dispute. A left turn is one of the most dangerous maneuvers a motorist can make and it should be executed with great caution and the exercise of a very high degree of care. Louisiana Revised Statutes 32:122 and Griffin v. Whiteman (La.App. 4 Cir., 1964) 169 So.2d 639.
Had Weaver made proper observation of oncoming traffic, he would or should have seen the approaching motorcycle. While it is true a motor cycle is perhaps more difficult to see than an automobile, the use of such equipment is permitted by our law and it is the duty of a motorist, before making a left turn, to ascertain the way is clear and his turn can be made in safety. He must observe all oncoming vehicles whether they be trucks, automobiles, bicycles or motorcycles. Under the facts of this case we find defendant did not exercise the degree of care required of him before making a left turn and such negligence was the sole proximate cause of the injuries.
Although plaintiff had technically violated the speed limit, which was stipulated to be 35 miles per hour, we do not find this minor violation was a proximate cause of the accident and, therefore, the alternative plea of contributory negligence tendered by defendants was properly overruled.
According to the minutes, the lower court awarded plaintiff the sum of $15,000 for his personal injuries plus $314.03 for special damages. There were only two medical experts who testified, both of whom were presented by plaintiff. Dr. Keith Mason, a general practitioner of Shreveport, treated Martin from the date of his injuries on June 8, 1965 until July 15, 1965. He concluded Martin had received painful injuries about his face and body and that his right shoulder had been partially dislocated from its socket. He then recommended that he be treated by an orthopedic surgeon.
Dr. Ray E. King, an orthopedic specialist of Shreveport,’ examined plaintiff on two occasions, the last time being on September 8, 1965. Dr. King concluded Martin’s principal injury was to his right shoulder in that as a result of the injuries there was a very small clearance between the ball, or the humeral head, and the acromium process, so that when he raised his right arm there *747 was a slight impingement of this hone fragment against the bone above which would cause him considerable pain. He further testified this condition could not he corrected by surgery and it would be permanent. The plaintiff was an electrician by trade and Dr. King was of the opinion the injuries received in the accident would cause him considerable pain in his work for the remainder of his life.
No evidence was offered by defendants to contradict the findings of either of these medical experts. In view of the painful injuries received by plaintiff and the uncontradicted testimony that the condition of his right arm and shoulder will permanently and painfully impair his ability to pursue his trade as an electrician, we feel an award of $15,000 for these injuries is neither inadequate nor excessive.
Documents were filed in evidence showing the following items of special damages:
Repair to the motorcycle.$ 65.03
Medical expenses to Dr. Mason... 184.00
Medical expenses to Dr. King.... 65.00
TOTAL $314.03
Plaintiff in his petition sets forth loss of wages in the sum of $1,541.60 but this item was not included in the award of the lower court. Dr. Mason testified Martin’s injuries prohibited him from returning to work from the date of the accident on June 8, 1965 until he released him on July 15, 1965. The only other evidence relative to loss of wages is plaintiff’s own testimony that he was off from work approximately ten weeks. It is undisputed he was earning $4.10 per hour at the time of the accident, or $164.00 per week. Based upon this testimony and this rate of pay he would be entitled to $1,640.00 for loss of wages. However, there was objection to any testimony which might enlarge the pleadings, so for this reason he would be restricted to recovery in the sum of $1,541.60 for loss of wages as asked for in the petition.
For the reasons assigned, the judgment appealed from is amended by increasing the award from $15,314.03 to $16,855.63 and as thus amended the judgment is affirmed at appellants’ cost.
Amended and affirmed.
Rehearing denied.
GLADNEY, J., dissents from refusal to grant rehearing.