373 So.2d 1362 (1979)
Louis Earl BENNETT
v.
UNITED STATES FIDELITY AND GUARANTY COMPANY et al.
No. 12687.
Court of Appeal of Louisiana, First Circuit.
July 16, 1979.
Rehearing Denied August 28, 1979.
*1363 Paul H. Due, Baton Rouge, Joseph H. Simpson, Amite, for plaintiff.
Daniel R. Atkinson, Baton Rouge, for defendants.
Before CHIASSON, EDWARDS and COLE, JJ.
COLE, Judge.
This case involves an automobile accident which occurred on October 9, 1976, at approximately 9:23 P.M. The site of the accident is located near Amite, Tangipahoa Parish, on Louisiana Highway 16, three-tenths of a mile west of its intersection with I-55. At the point of collision the highway runs east and west and is a two lane thoroughfare divided by a double yellow line with markers imbedded in the road surface to alert a driver crossing the center line. There was nothing to prevent the involved drivers from seeing each other for a considerable distance prior to impact. Weather was not a factor in the collision.
Plaintiff-appellee, Louis Earl Bennett, was proceeding east and the adverse driver, Tanya F. Spears, was proceeding west. The accident happened when the Spears vehicle turned left to enter a private driveway, and crossed the path of the oncoming Bennett vehicle.
Bennett brought suit against Tanya F. Spears (driver), Roy H. Spears (owner), United States Fidelity and Guaranty Company (insurer), and against his own insurance carrier on the basis that it covered the Spears vehicle as one underinsured. After motions and stipulations, only United States Fidelity and Guaranty Company remained as a defendant at the time of trial. It now appeals urging numerous errors on the part of the trial court. The final judgment reflects a joint stipulation by the parties effectuating a reduction in plaintiff's demands for damages to the policy limits of $100,000, plus legal interest thereon from date of judicial demand, provided the court would fix actual quantum and the defendant would pay interest on any excess amount from the date of judgment. Specifically, the trial court rendered judgment in favor of plaintiff-appellee and against defendant-appellant for $100,000, plus legal interest thereon from date of judicial demand, *1364 until paid; for legal interest only on an additional sum of $156,982.77 from date of rendition of judgment, until paid; and, for all costs of court including expert witness fees and deposition costs. It was determined that the total value of plaintiff's claims was $256,982.77.

ASSESSMENT OF CREDIBILITY
Defendant complains bitterly that the trial court's failure to evaluate properly questions of credibility resulted in manifest error as regards the issues of negligence, contributory negligence, the existence of injuries, and the causal connection between such injuries and the accident.
At the outset we note that plaintiff did not tell the truth in several instances. His most relevant prevarications were not under oath but related to important questions of fact bearing on aspects of his employment record and the nature of the injuries received in the accident. At trial, he admitted he was dishonest when he asserted to his employer's workmen's compensation carrier that he had not hurt his back in the automobile accident but had sustained his back injury on the job. This was completely contrary to the thrust of plaintiff's claim in this tort action and was allegedly done out of economic necessity. Under oath, there are other inconsistencies in plaintiff's testimony which suggest a failure on his part to either understand the judicial process or respect truth as its foundation.
Defendant contends that the doctrine of "falsus in uno, falsus in omnibus" should apply herein thus discrediting the entire testimony of plaintiff. However in the instant case, even after it was demonstrated that plaintiff willfully misrepresented certain facts, it would not be proper to discredit all of plaintiff's testimony because essential, relevant statements made by him were corroborated by other credible and uncontroverted evidence. We find in the record corroboration for plaintiff's sworn testimony relating to the issues of negligence, contributory negligence, injuries sustained, and causation. The maxim "Falsus in Uno, Falsus in Omnibus" is a harsh and unrealistic rule which should be applied only with extreme caution. Succession of Viosca, 202 So.2d 511 (La.App.4th Cir. 1967). See also Robinson v. Liberty Mutual Insurance Company, 309 So.2d 791 (La.App.4th Cir. 1975). Considering all the evidence in this case, the trial judge was not required to fully discredit plaintiff and we find no manifest error in his not doing so. As stated in Satterwhite v. Zurich Insurance Company, 199 So.2d 429 (La.App.1st Cir. 1967), at 435:
The responsibility to weigh carefully, judge cautiously, and evaluate thoroughly the testimony of witnesses bears heavily on the shoulders of the trial judge and his determination of the credibility of witnesses and the reasonableness and truthfulness of their testimony should not be overturned except upon a showing of clear, positive, and manifest error. (Citations omitted.)

LIABILITY
The trial court held that the negligence of Ms. Spears was the sole legal and proximate cause of the accident. It concluded that she failed to yield the right-of-way to plaintiff, attempted to make a left turn directly in front of him, and failed to maintain a proper lookout. In holding that plaintiff was not guilty of contributory negligence, the trial court found that when the left turn maneuver was executed in front of him it was at a point in time and distance when there was no reasonable opportunity to avoid the accident. Plaintiff's speed and alcohol consumption were rejected by the trial court as causative factors. Defendant specifies that the trial court committed manifest error in holding Ms. Spears guilty of negligence and in failing to find plaintiff guilty of contributory negligence. We disagree. A microscopic review of the entire record, including the testimony adduced at trial, the stipulations of counsel, the exhibits, and the depositions *1365 establishes that the above findings are not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Evidence pertinent to the cause of the accident consisted of the testimony of Steve Anthony, the state trooper who conducted the usual investigation; Sandra Breland Fontenot, a disinterested witness who was in the immediate vicinity and saw the impact and the movement of the vehicles just prior thereto; Phillip Wade Magee, a passenger in the Spears vehicle; the plaintiff, Louis Earl Bennett; and the adverse driver, Tanya F. Spears. From this testimony the following additional facts are ascertained.
The point of collision was in the plaintiff's eastbound lane of travel. Plaintiff's vehicle sustained heavy front end damage. It impacted toward the front, right side of the Spears vehicle. Skid marks from the plaintiff vehicle, measured to the point of impact, were 54 feet from the front tires and 46 feet from the rear tires. Plaintiff seemed to have tried to veer to the right just prior to the collision. His vehicle traveled 42 feet after impact. The force of the impact caused the Spears vehicle to move 85 feet eastward (back in the direction from which it had come) turning in a half circle. Continuous contact between the two vehicles for that distance was not established. The posted speed limit was 45 miles per hour. Just prior to the collision Tanya Spears was turning at a slow rate of speed after coming to a complete stop. The plaintiff's speed was estimated to be 59 miles per hour, and from all the available evidence, this seems to have been his approximate rate of travel. Before Tanya Spears began her left turn maneuver, she saw the lights of an oncoming vehicle she believed to be in the vicinity of a restaurant approximately 400 feet away. She could not say for sure that it was the plaintiff vehicle as she did not maintain visual contact with it. The plaintiff saw the lights of the Spears vehicle as he approached the point of collision but paid no particular attention until the vehicle began to cross in front of him. The commencement of the left turn by Tanya Spears and the impact of the two vehicles was almost instantaneous. This is sequentially established by a clear preponderance of the evidence.
The driver of a vehicle intending to turn left bears the responsibility of yielding the right-of-way to vehicles approaching from the opposite direction which are so close as to constitute an immediate hazard. LSA-R.S. 32:104(A). Such a motorist, when involved in an accident, is burdened with a presumption of liability for the accident. He must show that he was free from negligence to avoid the imposition of liability. A high standard of care being required of a left-turning motorist, it is incumbent upon him to ascertain before attempting the maneuver that it can be made safely and without danger to oncoming traffic. He must refrain from making a left turn unless the way is clear. The defendant herein has failed to bear the heavy burden of showing that Tanya Spears was free from negligence. Casimere v. Ryder Truck Rental, Inc., 324 So.2d 855 (La.App.4th Cir. 1976), writ denied 329 So.2d 453 (La.); London v. Stewart, 271 So.2d 576 (La.App.1st Cir. 1973); Vick v. Hanover Ins. Co., 221 So.2d 523 (La.App.2d Cir. 1969); Martin v. Weaver, 191 So.2d 744 (La.App.2d Cir. 1966); Estes v. Hartford Accident & Indemnity Co., 187 So.2d 149 (La.App.2d Cir. 1966), writ denied 249 La. 468, 187 So.2d 444.
Addressing the question of whether the negligence of Tanya Spears was the sole cause of the accident as was decided by the trial court or whether the plaintiff's consumption of alcohol, his excessive speed and his alleged failure to maintain a proper lookout were causative factors, we make the following observations.
The record does not sustain the contention that plaintiff failed to maintain a proper lookout. He saw the Spears vehicle and had a right to assume that it would maintain its proper position and not encroach *1366 upon his lane of travel. Admittedly, he did not give the vehicle more than casual observation until it commenced to turn in front of him. Under the attendant conditions, he was under no duty to keep it under intense observation anticipatory to the execution of an abrupt left turn as he approached.
The record does establish that the plaintiff was exceeding the posted speed limit by approximately fifteen miles per hour at the time of the accident. The physical evidence at the scene corroborates the relevant testimony. A recitation of detail is omitted as we concur in the trial court's conclusion that plaintiff was exceeding the speed limit.
Evidence relating to plaintiff's alleged intoxication and impairment of driving ability consisted of various exhibits and the testimony of several persons. We have carefully considered the expert testimony of Charles Strong Andrews, employed by the Louisiana State Police Crime Laboratory, and that of Dr. Albert L. McQuown, pathologist. Also, we have considered the testimony of plaintiff; his brother, Edgar Bennett; that of Steve Anthony, the state trooper; and, that of Sidney M. Cutrer, an ambulance driver who was at the hospital when the plaintiff was brought there. The trial court concluded that the plaintiff "may have consumed more alcohol than he admitted at trial."
We pretermit a determination of whether the plaintiff was actually intoxicated at the time of the accident and, if so, the extent of his intoxication. We find it unnecessary because assuming, arguendo, intoxication and some impairment of driving ability, we conclude, as did the trial court, that plaintiff's condition did not equate to actionable contributory negligence. The facts established herein bearing on the subject of causation negate any factors other than the negligent acts of Ms. Spears.
The alcohol-induced impairment of a driver's ability must be a substantial contributing cause of the driver's negligence. Further, the defendant, who bears the burden of proving contributory negligence, must prove by a preponderance of the evidence that the driver's intoxication was a substantial factor contributing to the accident. Marcotte v. Travelers Insurance Company, 258 La. 989, 249 So.2d 105 (1971). The defendant herein has not successfully borne the burden of proof. The record does allow one to speculate as regards impairment of driving ability in relation to vital time and distance measurements. However, speculation will not suffice to show that when Ms. Spears executed her left turn the plaintiff was a considerable distance away and that at least partly because of his speed and slow reaction time the accident occurred. For the defendant to prevail, the record must support the conclusion that the accident could have been avoided had plaintiff been going within the posted speed limit or if he had not consumed alcohol. It does not. Bradley v. Allstate Insurance Company, 307 So.2d 132 (La.App.1st Cir. 1974), writ denied 310 So.2d 644 (La.).
A case in point which demonstrates the law applicable to the facts established by the evidence in this matter is that of Bland v. Interstate Fire and Casualty Co., 311 So.2d 480 (La.App.4th Cir. 1975). Because of its strong analogous context we quote, at p. 482:
The investigating officer testified that Bland stated that he was traveling 65 miles per hour and that Bland smelled of alcohol and was staggering. Other witnesses established that Bland's speech was slurred and his coordination was impaired. The trial judge's finding of contributory negligence was primarily founded on drunkenness and excessive speed. While we agree that the record supports factual findings that Bland was intoxicated and that he was exceeding the speed limit by about 10 miles per hour, defendants had failed to prove that either of these factors was a contributing cause of the collision.
The fact that a motorist involved in an accident was speeding or intoxicated does *1367 not in and of itself require a finding of liability. Speed and intoxication do not directly cause accidents, but rather influence behavior and result in acts or omissions which cause accidents.
... By the time Bland knew or should have known she was not going to respect his right of way, it was too late for him to take any evasive action. Mrs. Melancon's sudden and unexpected turning into the westbound lanes and her encroaching into Bland's lane left him no opportunity for defensive reaction, regardless of his speed or state of intoxication, and the facts that his judgment was impaired by drinking and his ability to control the car was impaired by excessive speed were of no consequence in the determination of causation.
See also Prestenbach v. Sentry Insurance Company, 340 So.2d 1331 (La.1976).

INJURIES SUSTAINED
Defendant complains that the trial court erred in holding that plaintiff proved by a preponderance of the evidence that his back condition which necessitated surgery was caused by the accident in question. It is submitted that the plaintiff proved only a minor shoulder injury which healed within a few weeks. The trial court reasoned:
The medical evidence in the form of depositions of the treating physicians, Doctors Strange and Poché, indicate that plaintiff manifested symptoms of lumbar disc injury before he ever encountered any possible work injury with Rust Engineering and there was nothing unusual about the chronology of events or the amount of time which elapsed before conclusive diagnosis of the nature of plaintiff's injury was obtained, which diagnosis was indeed confirmed at surgery.
In this regard, we find no manifest error.
A few days after the accident plaintiff saw Dr. R. E. Goldsby. He testified that plaintiff's complaints were with reference to his left shoulder and right knee. He did not record a back complaint. Dr. Goldsby also examined the record of the hospital to which plaintiff was taken the night of the accident. He stated the record did not disclose that plaintiff complained of pain in the back although it did note plaintiff had a tingling sensation in his legs. The hospital record disclosed complaints of pain only in the shoulders, arms, forearms and chest. Dr. Goldsby felt that plaintiff sustained very minor injuries.
Sidney M. Cutrer stated that when plaintiff was brought to the hospital he was on a spinal board and acted as though his back was hurting. The same night, according to Cutrer, the plaintiff told him he could not move his back.
Plaintiff's testimony, both deposed and at trial, contained a recitation of his pain and physical problems following the accident. In essence, he took the position that following a disc operation in September 1974, he was able to and did perform his duties in such varied positions as welder, welding instructor, and pipeline construction inspector (mechanical, electrical, and welding). Such duties required bending, stooping, lifting, and other usual construction tasks. Although plaintiff performed similar job duties after the accident, as supervisor and coordinator for subcontractors on pipe jobs, he maintained that he did so in pain and with increasing difficulty leading to a laminectomy by Dr. Poché and a spinal fusion by Dr. Strange in August 1977. He attributed his back problems to the accident and referred to job-related incidents after the accident as having only irritated or aggravated his problem. Plaintiff now feels that he will never be able to return to his usual pursuits. He has been accepted as totally disabled for the payment of social security benefits. He was thirty-six years old at the time of trial.
The most persuasive evidence on the cause, nature, and extent of the injuries received in the accident of October 9, 1976, came from Drs. Charles A. Strange and James A. Poché, orthopedic surgeon and neuro-surgeon, respectively.
*1368 Dr. Strange saw the plaintiff on November 19, 1976; January 20, 1977; February 14, 1977; July 18, 1977; and, he participated in the surgery on August 3, 1977. Dr. Poché saw the plaintiff on October 25, 1976; January 27, 1977; July 18, 1977; performed a myleogram on plaintiff on July 25, 1977; and, participated in the surgery on August 3, 1977.
Defendant contends that plaintiff had a residual disability from the 1974 surgery, did not reinjure his back in the accident but did suffer further injuries to his back after the accident while working. Plaintiff's credibility, or lack thereof, is interposed by defendant as rendering invalid any opinion expressed by Drs. Strange and Poché to the effect that plaintiff suffered a new back injury in the accident. The point is made that such an opinion is based upon the truthfulness of what the plaintiff told them, and since he is an untruthful person the opinion has no probative value. Various hypothetical questions were posed by the defendant to the doctors to demonstrate this contention.
Discounting anything the plaintiff may have told the doctors about his back condition and the physical trauma he sustained at various times, it is uncontroverted that the job-related incidents of record occurred in February and April 1977. After the collision but prior to the job-related accidents, the plaintiff was seen twice by both doctors. Their findings on those occasions and the opinions based thereon are the corroboration which offsets plaintiff's questionable veracity and preponderates in establishing the fact that plaintiff reinjured his back in the accident of October 9, 1976.
Dr. Strange stated that on November 19, 1976, plaintiff's back was tender to palpation, he had limited motion in his back and had a positive straight-leg-raising test bilaterally which is an evaluation of muscular tightness and irritability of the sciatic nerve in the lower back. His impression at that time was that plaintiff had damage to his lower back of undetermined quantity.
On January 20, 1977, Dr. Strange found that plaintiff symptomatically had not improved and was having more difficulty than before. He noted plaintiff's trouble in maintaining his independence of ambulation and physical activity. Dr. Strange concluded on this occasion that plaintiff quite possibly had a recurrent disc herniation, that his injury was deeper than just a muscular one, and that he merited a myleogram and complete workup.
The above findings and impressions, together with subsequent medical events, led Dr. Strange to opine that plaintiff's symptoms were commensurate with the automobile accident trauma of October 9, 1976. He felt it was the accident which precipitated the back trouble and that the job incident in February 1977 only exacerbated the condition.
Dr. Poché stated that on October 25, 1976, plaintiff complained of pain in the left shoulder, arm, neck, and back. Because of an extreme amount of pain on manipulation of the shoulder, he referred plaintiff to an orthopedic surgeon. On January 27, 1977, plaintiff complained to Dr. Poché of pain in the neck, left arm, back, and legs. Dr. Poché found upon examination an absent ankle jerk in plaintiff's left leg and some decreased sensation. He was uncertain as to the cause of plaintiff's problems. He discussed with plaintiff treatment but plaintiff said he would rather defer treatment and continue to work. Dr. Poché's notes did not mention a suggested myleogram but he stated that he usually discusses it with people who are acutely symptomatic. He added that at this time plaintiff had symptoms that were consistent with disc disease and this alone was enough to warrant his hospitalization and myleogram procedure.
Based upon the information contained in his medical file, Dr. Poché was of the opinion that plaintiff, as of January 1977, probably had an anatomic recurrence of his disc problem and that if he later reinjured his back on the job it exacerbated his symptoms. He concluded:

*1369 With the information I have in my file, I'd say the automobile accident caused this recurrence of his disc condition and subsequently it came to surgery based on the information in my file.
From the above, we must conclude that the plaintiff has proven by a preponderance of the evidence that he injured his back in the automobile accident and that his laminectomy and spinal fusion were medical residuals of the injury.

QUANTUM
The trial court, in accordance with the stipulation of the parties to have actual quantum assessed, arrived at a value of $256,982.77 for plaintiff's claims. This sum included $6,982.77 for medical expenses; $200,000 for loss of earnings and impairment of future earning capacity; and, $50,000 for personal injuries sustained, past and future pain and suffering, and past and future mental anguish and distress. Defendant complains that the damages are excessive.
Part of the medical expenses incurred by plaintiff was for successive periods of hospitalization in the amounts of $818.80 and $2,347.17. Defendant contends these sums were paid by workmen's compensation benefits and should be credited against the $6,982.77 awarded. The record is clear that only the $818.80 was paid by the workmen's compensation carrier. It is immaterial, however, as defendant's contention is without foundation in law. The jurisprudence is to the effect that a plaintiff's tort recovery is not diminished because of payments made through insurance benefits received from other collateral sources independent of the wrongdoer's procuration or contribution. Womack v. Travelers Insurance Company, 258 So.2d 562 (La.App.1st Cir. 1972), writ refused 261 La. 775, 260 So.2d 701. For further application of the "collateral source rule," see Wallace v. Pan American Fire & Casualty Co., 352 So.2d 1048 (La.App.3d Cir. 1977), writ refused 354 So.2d 209 (La.).
In decreeing a value of $200,000 for loss of earnings and impairment of future earning capacity the trial court did not detail what part of that sum was for wages which would be lost as a result of residual disability. Although somewhat unclear it appears that the trial court based the total award on both actual losses sustained and losses which would be sustained during plaintiff's work life expectancy.
The record shows that the plaintiff did not work from the date of the accident (October 9, 1976) until January 11, 1977. It reasonably appears that he was unable to do so. After returning to work on January 11, 1977, he continued his employment until June 13, 1977 when he could no longer perform his duties because of pain and disability. Plaintiff underwent surgery on August 3, 1977 and the prognosis of his attending physician was that he would obtain maximum recovery approximately twelve months thereafter. It appears, therefore, that plaintiff's loss of wages due to accident-related incapacity extended over a period of sixteen and two-thirds months. Plaintiff's last employment availed him of approximately $2,500 monthly. Using these earnings as representative of his wage productivity, plaintiff sustained an actual loss of $41,650.
To the extent that the balance of the $200,000 would have to be for future loss of earnings beyond the point of recuperation from the surgery of August 3, 1977 we find that error was committed. Any such item of damages would have to be based upon some disability which the plaintiff did not possess prior to the accident and which was caused by the accident. The record does not reveal that plaintiff's disability is greater now than it was before the accident of October 9, 1976. The contrary is established.
It was the explicit testimony of Dr. Strange that the plaintiff would rate approximately the same amount of disability after the back surgery necessitated by the accident as he had following his first surgery in September 1974. Following the *1370 first disc surgery plaintiff had been advised not to do heavy lifting. This medical advice is unchanged. Dr. Strange not only felt that the second disc surgery created no additional disability but believes that the plaintiff now has less functional disability because of the fusion. He stated:
I'll say that I'm going to be disappointed if he symptomatically isn't a lot better after this operation. Disabilitywise it's very close in a man who has this much scar formed for a fusion and a laminectomy. And I think that that's not the point. I think he should be better for the fusion than he would had he not had it. And I'm going to think that he's going to be better. Now, he's going to rate still approximately the same amount of disability.
Dr. Poché concurred in the opinion of Dr. Strange that if plaintiff's last surgery was successful he would suffer no additional disability. He was asked: "Assuming that the surgery is successful with reference to the fusion, does this create any more or less disability than Mr. Bennett had after his 1974 surgery?" He replied: "No. If this were a very successful operation, I would not say it causes anymore disability."
The deposed testimony of both Dr. Strange and Dr. Poché was taken approximately six months after the surgery and there was no indication given that the surgery might not be successful. The contrary was implied when Dr. Strange stated that plaintiff should obtain maximum result from the surgery in another six months. It was the belief of both doctors that approximately one year after the spinal fusion and laminectomy the plaintiff could return to supervisory and inspection duties in his craft which is the type activity he engaged in following his first back surgery.
The defendant concedes that if the plaintiff is entitled to recover for the disc surgery the award of $50,000 by the trial court for his pain and suffering is not an abuse of its discretion. We have, of course, already affirmed the correctness of the trial court's holding that the disc surgery was necessitated by the accident giving rise to this litigation and for which plaintiff is entitled to recover damages.
In summary, the record reveals that the trial court abused its discretion in fixing quantum only to the extent that it indirectly placed a value of approximately $158,350 on the impairment of plaintiff's future earning capacity when no such impairment was proven. We disturb the actual award by lowering it to the highest point which is reasonably within the discretion afforded the trial court, to wit, the sum of $98,632.77 plus legal interest thereon from date of judicial demand, until paid, together with all costs of court incurred below. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
Having reduced the award of the trial court below the applicable policy limits there is no need to address the remaining specification of error asserted by defendant to the effect that the trial court failed to consider the inability of Ms. Spears to respond in damages. The stipulation that Ms. Spears would be dismissed from the suit but that U.S.F. & G., as the remaining defendant, would be treated the same as though she were still in the case insofar as legal interest was concerned must now be disregarded as it is no longer operative or relevant. The liability of defendant to pay legal interest from the date of judgment on quantum fixed in excess of the $100,000 policy limits is not now at issue.
The costs of this appeal are assessed equally against appellant and appellee.
AMENDED AND AFFIRMED.