844 So.2d 949 (2003)
Nancy LOCKETT and Ronny Lockett, Husband and Wife
v.
The STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
No. 2002 CA 0651.
Court of Appeal of Louisiana, First Circuit.
April 2, 2003.
Rehearing Denied May 30, 2003.
*951 Leonard Cardenas, III, Baton Rouge, Counsel for Plaintiffs-Appellees Nancy Lockett and Ronny Lockett, Husband and Wife.
Honorable Richard P. Ieyoub, Attorney General, E. Wade Shows, Ronnie J. Berthelot, Carlos A. Romanach, Special Assistant Attorneys General, Baton Rouge, Counsel for Defendant-Appellant The State of Louisiana, Department of Transportation and Development.
Before: FITZSIMMONS, GUIDRY, and PETTIGREW, JJ.
FITZSIMMONS, J.
The State of Louisiana, through the Department of Transportation and Development (DOTD), appeals a trial court judgment in which DOTD was deemed sixty-five percent at fault in a traffic accident. Nancy and Ronny Lockett have answered the appeal. Following our review of the record and law, this court affirms.

FACTUAL BACKGROUND
Katy Lockett, the daughter of Nancy and Ronny Lockett, was a passenger in a vehicle driven by Miranda Britt Rupnarian. The vehicle proceeded in a southerly direction along Louisiana Highway 19, a four lane undivided highway. Highway 19 is controlled by traffic lights at its intersection with Groom Road. Turning vehicles are regulated by a "green ball" or "left turn yield on green" light, as opposed to a "left turn only" indicator. Mrs. Rupnarian was in the process of executing a left turn at the intersection of Highway 19 and Groom Road, when another vehicle, traveling in the outside lane of traffic in a northerly direction along Highway 19, collided with her vehicle. Katy Lockett died as a result of the accident. Katy's parents, Nancy and Ronny Lockett, brought the instant lawsuit against DOTD, alleging that DOTD was responsible for the existence of an unreasonably dangerous condition at the intersection that was the cause of the accident.
Following a trial on the merits, the jury returned a verdict in favor of the Locketts. Miranda Britt Rupnarian was assessed thirty-five percent liability, and DOTD was assigned sixty-five percent liability. General damages in the sum of $500,000.00 each were awarded to Nancy and Ronny Lockett, as well as $100,000.00 for medical expenses and $10,000.00 in funeral expenses. Both parties' motions for judgment notwithstanding the verdict to set aside and modify the jury's apportionment of fault were denied. DOTD's motion for remittitur was granted, reducing the funeral expenses award to $7,991.24 and the medical expenses to $27,106.37.
DOTD appeals, asserting the following assignments of error:
(1) The jury's finding of sixty-five percent negligence on the part of DOTD;
(2) The trial court's refusal to instruct the jury on the damage limitations provided by La. R.S. 13:5106;

*952 (3) The jury's award of $1,000,000.00 in general damages;
(4) The trial court's failure to remove a juror; and
(5) The trial court's disregard of 23 U.S.C. § 409.
The Locketts answer the appeal, asserting that one hundred percent fault should have been assigned to DOTD.
We commence our review by addressing two procedural issues.

ADMISSIBILITY OF EVIDENCE
DOTD argues that the trial court committed an evidentiary error by allowing the admission of safety-related material for which DOTD possesses a privilege of statutory immunity. The evidence was obtained by the Locketts from the City of Baker.
The provisions of 23 U.S.C. § 409 state that any "reports, surveys, schedules, lists, or data compiled or collected" for specified federal evaluation programs, or which are gathered for the purpose of a highway safety construction improvement project that "may be implemented utilizing Federal-aid highway funds[,]" are privileged, not discoverable, and not admissible in state or federal court. This privilege has not been liberally applied to all data irrespective of the possessor. In Irion v. State, Department of Transportation and Development, 1998-2616, pp. 5-6 (La.App. 1 Cir. 5/12/00), 760 So.2d 1220, 1226, writ denied, 2000-2365 (La.11/13/00), 773 So.2d 727, when DOTD attempted to exclude evidence sought from the files of agencies other than DOTD, this court held that reports compiled by the Department of Public Safety and by the Ascension Parish Police Jury Resolution, as opposed to files in DOTD's possession, could not be construed to be collected or compiled for the purpose of obtaining federal funds or to enforce safety. In the instant case, the Locketts did not rely on DOTD for their discovery. See and compare Palacios v. Louisiana and Delta Railroad Inc., 98-2932, p. 13 (La.7/2/99), 740 So.2d 95, 102.
Most recently, the United States Supreme Court in Pierce County, Washington v. Guillen, ___ U.S.___, 123 S.Ct. 720, 730, 154 L.Ed.2d 610 (2003), stated that an accident report that was collected by an agency for purposes unrelated to eligibility for federal funds would not be protected under 23 U.S.C. § 409, even though the same report would be protected in the hands of another department that first obtained the report for federal funding purposes. Thus, the fact that the records of the Mayor of Baker or Baker's Chief of Police included information that could be construed to be safety records of DOTD does not confer immunity on those records. DOTD cannot preclude the admission of evidence obtained from the City of Baker.

FAILURE TO REMOVE A JUROR
During voir dire, plaintiffs' counsel posed the following question: "I need to know, on a serious note, whether there are any particular problems that would prevent you from devoting your full attention to this case for the next several days. Any particular problems, anyone?" A juror, Ruby Allen, indicated that she had experienced two nervous breakdowns in the past. On further questioning, Ms. Allen stated that she was working every day and liked to "move around." She indicated that she was raising six children, regularly attended church, and was a voting citizen. Ms. Allen thereafter recounted that her father and boyfriend had died three years beforehand.
Counsel for the defense posed no questions to Ms. Allen; however, he later challenged her for cause on the basis that she *953 had undergone two nervous breakdowns. The trial judge overruled the challenge.
Challenges for cause are regulated by La. C.C.P. art. 1765. That statute provides:
A juror may be challenged for cause based upon any of the following:
(1) When the juror lacks a qualification required by law;
(2) When the juror has formed an opinion in the case or is not otherwise impartial, the cause of his bias being immaterial;
(3) When the relations whether by blood, marriage, employment, friendship, or enmity between the juror and any party or his attorney are such that it must be reasonably believed that they would influence the juror in coming to a verdict;
(4) When the juror served on a previous jury, which tried the same case or one arising out of the same facts;
(5) When the juror refuses to answer a question on the voir dire examination on the ground that his answer might tend to incriminate him.
The only conceivable ground for challenge in the instant case would be premised on an allegation that Ms. Allen lacked a qualification by law. In addition to the age and citizenship requirements established pursuant to La. Const. Art. 5 § 33, the qualifications of a juror are delineated in La. R.S. 13:3041, which tracks La. C.Cr.P. art. 401. The pertinent portion of La.C.Cr.P. art. 401 provides:
A. In order to qualify to serve as a juror, a person must:
...
(4) Not be under interdiction or incapable of serving as a juror because of a mental or physical infirmity, provided that no person shall be deemed incompetent solely because of the loss of hearing in any degree.
...
B. Notwithstanding any provision in Subsection A, a person may be challenged for cause on one or more of the following:
...
(2) When reasonable doubt exists as to the competency of the prospective juror to serve as provided for in Code of Criminal Procedure Article 787.
Article 787 permits the court to "disqualify a prospective petit juror from service in a particular case when for any reason doubt exists as to the competency of the prospective juror to serve in the case."
It is a well-settled principle of law that the trial judge is vested with broad discretion when ruling on challenges for cause. Seals v. Pittman, 499 So.2d 114, 118 (La. App. 1st Cir.1986), writs denied, 503 So.2d 15 (La.1987) and 503 So.2d 1021 (La.1987), cert, denied, 484 U.S. 840, 108 S.Ct. 126, 98 L.Ed.2d 84 (1987). Only when the record reveals a clear abuse of discretion should the appellate court disturb the trial court ruling. In re Medical Review Panel ex rel. Laurent, 94-1661, p. 7 (La.App. 1 Cir. 6/23/95), 657 So.2d 713, 718. The reasoning behind this principle is that the trial judge is in the best position to ascertain the juror's demeanor, sincerity, fairness and credibility. Id.
In the case before us, the trial judge noted that Ms. Allen was a functioning citizen in the parish and should, therefore, be able to decide the case based upon the evidence. The judge added that she was gainfully employed, a practicing Christian, and a current voter. There is no evidence apparent in the record to substantiate that the judge abused her discretion in finding that Ms. Allen met the qualifications required by law.

*954 NEGLIGENCE

DOTD
The jury found that DOTD was negligent and that its negligence constituted sixty-five percent of the cause of Katy Lockett's death. Thirty-five percent negligence was attributed to Miranda Britt Rupnarian, the driver of the vehicle in which Katy Lockett had been riding as a passenger.
Under a theory of negligence, liability hinges on whether the defendant has breached his duty to the plaintiff. Duplantis v. Danos, 95-0545, p. 4 (La.App. 1 Cir. 12/15/95), 664 So.2d 1383, 1386. DOTD's duty to its travelers is to keep the state's highways in a reasonably safe condition for persons exercising ordinary care. Irion, 1998-2616, p. 8, 760 So.2d at 1228. An unreasonably dangerous condition of a roadway results in a breach of duty by DOTD. Such a determination is dependent on the facts and circumstance of each case. Hunter v. State, Department of Transportation and Development, 620 So.2d 1149, 1151 (La.1993). Moreover, as an appellate court, our review of a trial court or jury's factual findings is limited to whether a reasonable factual basis exists in the record. It is only in the absence of a reasonable factual basis that the court of appeal may find manifest error or clear wrongness. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Stobart, 617 So.2d at 882.
It is not disputed that a blind spot was created at the intersection in the outside lanes when, as in this instance, two opposing vehicles were each stopped at the intersection and waiting to make left turns onto Groom Road from the north and south inside lanes. The evidence presented at trial also reveals that DOTD had been aware of the flawed condition of the intersection and the history of a high accident rate. Testimony by six witnesses who had been involved in prior accidents at the subject intersection pointed to the wide blind spot that obscured their vision of an oncoming vehicle at the intersection. Additionally, Mayor Bobby Ray Simpson of Baton Rouge testified that as far back as 1993, when he was Mayor of Baker, a request had been made on behalf of the City of Baker to DOTD to lower the speed limit on Highway 19 from forty-five to thirty-five miles per hour due to the multitude of accidents. In August 1994, Mayor Simpson had written General Jude Patin, Secretary of the DOTD, to request assistance in adding a fifth lane on Highway 19 through Baker. The same request was made to Senators Ron Landry and Mike Cross and Representatives Raymond Jetson, Mike McCleary, and Kip Holden, as well as to Don Neisler, Director of the Capital Region Planning Commission. In 1997, a letter from DOTD indicated that a turning lane for Highway 19 in Baker would "likely be effective in reducing the rear-end and left-turn accident rate." In 1999, Huey Dugas, of the Capital Region Planning Commission, wrote Dr. Kam Movassaghi, Secretary of DOTD, on the subject of Highway 19 as follows: "This section of roadway has experienced a very high rate of accidents and is listed by DOTD as having abnormal crash locations. This problem has been studied since 1987, with repeated conclusions of needed improvements."
Dr. Olin K. Dart, a traffic engineer with a specialty in highway design, safety, and accident reconstruction, testified that the addition of a fifth lane would have resolved the unreasonably dangerous condition *955 created by the blind spot that had been allowed to remain at the intersection. Dr. Dart stated that the obstruction to the driver's view was substantial, rather than instantaneous. Additionally, Dr. Dart testified that, in the absence of adding a fifth lane which would admittedly involve substantial capital outlay, the State could have feasibly provided a "turn on arrow only" signal to prevent accidents such as the one at issue. Dr. Joseph Blaschke, a civil engineer appearing on behalf of DOTD, responded that a "turn on arrow only" signal would require dedicating one of the lanes for left turns.
Deference is granted by reviewing courts to findings that are based on credibility determinations. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Having been presented with conflicting testimony concerning remedial feasibility, and in the absence of totally conflicting or implausible evidence or internal inconsistency that would contradict the witness's story, we must accept the jury's findings in the lower court. Rosell 549 So.2d at 844-845. Viewing the evidence as a whole, the jury was not unreasonable it its determination that DOTD violated its duty to insure that the highway was reasonably safe for persons exercising ordinary care and reasonable prudence. Stobart, 617 So.2d at 884; Irion, 1998-2616, p. 8, 760 So.2d at 1228. An unreasonably dangerous condition was allowed to remain for many years, notwithstanding the existence of alternative remedial possibilities that could have ameliorated the traffic condition. Therefore, we find no manifest error in the jury's finding that DOTD was negligent, and the jury's attribution of sixty-five percent fault to DOTD is not clearly wrong.
Miranda Britt Rupnarian
A left turning motorist should refrain from making a left turn until it has been determined that the turn can be made in safety. Duplantis, 95-0545 p. 10, 664 So.2d at 1389. A left turning motorist involved in an accident is burdened with a presumption of liability, and the motorist must show that he is free of negligence. Bennett v. United States Fidelity and Guaranty Company, 373 So.2d 1362, 1365 (La.App. 1st Cir.), writ denied, 376 So.2d 1269 (La.1979). In the case at hand, liability that would have ordinarily been attributed to Miranda Britt Rupnarian, as the left turning motorist, was mitigated by the existence of the blind spot at the intersection that impacted the driver's vision. The jury thus attributed thirty-five percent of the liability to her.
Finding no manifest error, we reject DOTD's contention that Mrs. Rupnarian should have been liable for a higher percentage of liability. In the same vein, this court recognizes the high degree of care that is required of a left-turning motorist, and we do not find that the jury erred in its allocation. The Locketts' assertion in their answer to the appeal that one hundred percent liability should have been borne by DOTD is also denied.

DAMAGES AWARD AND LA. R.S. 5106 B(2)
The jury awarded Nancy Lockett and Ronny Lockett the sum of $500,000.00 each in general damages for the wrongful death of Katy Lockett. DOTD maintains that the total sum awarded against DOTD is statutorily capped at the sum of $500,000.00; therefore, the total combined award of $1,000,000.00 to Mr. and Mrs. Lockett exceeded the statutory limitations. DOTD also asserts that the trial judge erred in her refusal to instruct the jury on the damages limitations provided by La. R.S. 13:5106 B(2).
Louisiana Revised Statute 13:5106 B(2) states:

*956 In all suits for wrongful death of any one person, the total amount recoverable, exclusive of property damages, medical care and related benefits and loss of earnings or loss of support, and loss of future support, as provided in this Section, shall not exceed five hundred thousand dollars.
In Ly v. State, Department of Public Safety and Corrections, 633 So.2d 197 (La.App. 1st Cir.1993), writ denied, 93-3134 (La.2/25/94), 634 So.2d 835, this court addressed the question of the statutory cap when there are multiple plaintiffs, and it expressly applied the $500,000.00 cap to each plaintiff. The basis for interpreting the provisions of La. R.S. 13:5106 to relate to each plaintiff, as opposed to one sum per lawsuit, was premised on the reality that each person "could have brought suit separately for their wrongful death actions, thereby entitling each to a separate legal cap." Ly, 633 So.2d at 207. Accordingly, we find that the jury award for general damages of $500,000.00 each to Mr. and Mrs. Lockett in the instant case does not exceed the statutory parameters. Our affirmation of the general damage awards concomitantly renders moot the issue of the court's failure to apprise the jury of the limitations of La. R.S. 13:5106.
In sum, the judgment of the trial court is affirmed. Costs of this appeal, in the sum of $3,331.64, are assessed to The State of Louisiana, Department of Transportation and Development.
AFFIRMED.