h MURRAY, Judge.
Defendant, the State of Louisiana through the Department of Transportation and Development [“DOTD”], appeals the judgment of the district court holding it liable to plaintiffs for injuries they incurred in a single vehicle accident on Louisiana Highway 300, also known as Delacroix Highway. On August 18, 1997, at approximately 1:00 a.m., a pick-up truck being driven by plaintiff Greg Matlock allegedly hit a rut in the road, veered off the highway and plunged into the adjacent bayou. Plaintiffs Sebastian Melerine, Donald Longfellow, and Paul Matlock were passengers in the truck. All four plaintiffs managed to escape the sinking vehicle and swim to shore. They filed suit against DOTD alleging that the sole cause of the accident was the defect in the road, which DOTD had negligently failed to maintain.
Following a five-day bench trial held in January of 1999, the district court found DOTD to be 75% at fault and assessed the remaining 25% to the driver, Greg Mat-lock. The trial court awarded damages to *102 the plaintiffs in the following amounts: Greg Matlock — $93,230.98; Sebastian Melerine. — $48,949.12; Donald 12Longfellow — $10,606.78; and Paul Mat-lock — $1,366.13.[1] DOTD appeals this judgment on the ground that the trial court erred in its finding of liability. After reviewing the record, we affirm.
DOTD argues the trial court committed manifest error in determining the location of the accident, in finding that a defect in the roadway existed, and in holding that DOTD had notice of the defect. This argument is based on the contention by DOTD that the trial court improperly credited the testimony of the plaintiffs and the plaintiffs’ witnesses as to where and how the accident occurred and refused to credit the testimony of other, disinterested and allegedly more objective, witnesses. DOTD contests only the issue of liability; it makes no argument with regard to damages.
Our review of the trial court’s findings is governed by the “manifest error” standard. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). When such findings are based on determinations regarding the credibility of witnesses, this standard demands great deference to the trier of fact. If documentary or objective evidence so contradicts a witness’s testimony, or the testimony itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, then the appellate court may find manifest error. In the absence of such factors, however, when the trial court’s finding is based on credibility determinations, “that finding can virtually never be manifestly erroneous or clearly wrong.” Id. at 844-45 (Citations omitted).
hit is undisputed that DOTD had custody of the state highway on which plaintiffs were traveling. The Louisiana Supreme Court has held that DOTD has a duty to maintain public highways in a condition that is reasonably safe for persons exercising ordinary care and prudence. Brown v. Louisiana Indemnity Company. 97-1344 at p. 3 (La.3/4/98), 707 So.2d 1240, 1242. This duty extends to the shoulders of highways as well, which duty encompasses the foreseeable risk that, for any number of reasons, including simple inadvertence, a motorist might wind up traveling on, or partially on, the shoulder. Id. at p. 4, 707 So.2d at 1242 (Citations omitted).
In addition to custody of the highway, plaintiffs had to prove three elements to support a finding of liability on the part of DOTD: (1) that the highway was defective because it had a condition that created an unreasonable risk of harm; (2) that DOTD had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time; and (3) that the defect was a cause-in-fact of plaintiffs’ injuries. Id. at p. 3, 707 So.2d at 1242 (Citations omitted).
The two major disputed issues at trial were the location of the accident and, assuming the accident occurred where plaintiffs alleged, whether DOTD had sufficient notice of the defective condition of the road in that location to be held liable for failing to repair it. The trial court found in favor of plaintiffs on both points, which findings are now assigned as errors by appellant DOTD.

^LOCATION OF THE ACCIDENT

At trial, plaintiffs attempted to prove that the accident occurred in a section of Delacroix Highway exactly three miles from its intersection with Louisiana *103 Highway 46, where the road curves sharply and where there existed a four to six inch rut at the road’s edge, which defect caused Matlock’s vehicle to leave the road. Conversely, DOTD attempted to show that the accident occurred about one-third of a mile away, on a straighter, non-defective section of Hwy. 300, directly across from the entrance to an old landfill commonly referred to as “the dump.”
Plaintiff Greg Matlock testified that in the early morning hours of August 18, 1997, he was driving home from Delacroix Island on what he knew as “Bayou Road,” officially Louisiana Highway 300, traveling about 35 miles per hour. The bayou was or his left side. When he entered a sharp curve, he steered to the right side of the highway to avoid any vehicles that might be coming toward him in the opposite lane, and his right tires hit a rut along the edge of the road, which pulled his truck further to the right. To keep from entering the woods on the right side of the highway, Matlock steered his vehicle to the left, at which point he said he hit a “little bump” and his truck shot straight across the highway into the bayou. Matlock and his three passengers escaped the submerged truck, swam to the bank, climbed out of the water, and flagged down a passing motorist, David Hebert. Hebert drove them to the nearby home of their friend, Melvin Campo, where they called 911. Campo then took the plaintiffs back to the scene of the accident to Rmeet Deputy Russell Gelvin, who investigated the accident for the St. Bernard Parish Sheriffs office.
Greg Matlock’s three passengers also testified at trial, and all corroborated his story as to where and how the accident occurred. In addition, with regard to the location of the accident, the defective condition of the road and causation, the plaintiffs presented the testimony of Gelvin, Campo, and two experts in accident reconstruction, Dr. Oscar F. Griffith and Mr. Raymond Burkhart.
Gelvin stated that he responded to the 911 call of a single vehicle accident on Delacroix Highway. When he arrived at the scene, he saw a vehicle completely submerged in the bayou with its headlights on. He parked his police unit and turned on his emergency lights to make sure no one coming down the road would hit his car because it was “in a curve.” He then questioned the four wet, muddy men who were standing on the side of the road with Melvin Campo, whom he recognized. Greg Matlock told the deputy that as he was driving, his vehicle “caught the edge” of the roadway, at which time he lost control and the vehicle plunged into the bayou. Examining the highway, Gelvin found debris in a rut on the opposite edge of the road from the bayou, loose gravel on the roadway and in the grass, and marks in the grass where the vehicle had entered the bayou. He estimated the rut to be four to six inches deep and ten to fifteen feet long. Gelvin described the location as a curved portion of the road with no lighting, having the bayou on one side and a wooded area on the other. According to Gelvin, there was no shoulder on either side of the road. The area where the vehicle entered the | ¿water had a bulkhead made of wood and sheet metal with pieces missing, and there was a cluster of six pilings in the water. For purposes of his report, he estimated the address to be 3300 Delacroix Highway and noted that it was across from the dump. Then, as he explained he did in all such investigations, Gelvin set the “tripometer” on his police unit at zero and drove to the closest intersection, Louisiana Highway 46, which his tripometer indicated to be exactly three miles from the spot of the accident. Gel-vin identified photographs of the accident location and testified that he was positive *104 the accident did not occur further down the road in the location urged by DOTD.
Melvin Campo confirmed the testimony of the plaintiffs and of Deputy Gelvin as to where the accident occurred. Griffith, a physicist and expert in accident reconstruction, explained his theory that the truck’s wheels being caught in the rut, the overcompensation by the driver in steering to the left, the angle of the roadway, and the higher elevation of the ground beyond it all combined to catapult Matlock’s vehicle over the bulkhead and into the water. Burkhart, an expert in accident reconstruction for the New Orleans Police Department, testified concerning the defective condition of the roadway in the area, stating that the shoulders were not level with the roadway, there were ruts, the traveled portion of the roadway was uneven, and there were vertical as well as sloped drop offs on both sides of the road. Burkhart opined that the primary cause of the accident was the rut or drop off encountered by Greg Matlock’s vehicle.
|7D0TD attempted to discredit the testimony of Gelvin and Campo by pointing out that, at the time of trial, both witnesses were being represented by the plaintiffs’ attorney in other lawsuits. In addition, DOTD alleged that Campo had changed his testimony at trial to comport with that of plaintiffs’ as to the exact accident location, having stated in his deposition that the accident occurred several hundred feet further south. As for Gelvin, DOTD introduced a tape recording of his radio transmission at the time of the accident in which he described the location as being “across from the dump.”
DOTD also presented three fact witnesses to support its contention that the accident occurred directly across from the entrance to the dump, a location approximately one third of a mile down the road from the site indicated by plaintiffs. David Hebert, the passing motorist who picked up the plaintiffs just after they emerged from the bayou, testified that the location was across from the dump. Cade Nunez, a tow truck operator who pulled Matlock’s truck out of the water on the afternoon of August 18th, stated that he recovered the vehicle across from the dump, pulling it over the intact wooden bulkhead. The third witness, paramedic Cindy Tuggle, testified that she arrived at the scene, which was at a curve in the highway, about forty-five minutes after the accident occurred, and noticed a truck submerged in the water and a truck (presumably Campo’s) parked on the shoulder on the bayou side of the road. DOTD contends that Ms. Tuggle’s testimony supports their accident location because there was supposedly no shoulder in the area described by plaintiffs. Finally, DOTD introduced two experts |ain accident reconstruction. Robert Lipp stated that the rut or drop off referred to by plaintiffs was approximately two inches deep, and therefore could not have caused Matlock’s truck to leave the roadway. Mr. Lipp also testified that the area where DOTD alleged the accident occurred was a straight, smooth section of the highway. The second expert, Wayne Winkler, opined that the scenario put forth by plaintiffs’ expert Griffith was implausible.
In extensive Reasons for Judgment, the trial judge explained how he had reconciled the testimony of the various witnesses with each other and with the physical evidence, including his own observations from a visit to each alleged accident site, to determine that the plaintiffs had met their burden of proving the location of the accident and the existence of a defect in that location that caused the accident. He noted that his primary consideration in determining the accident site was the information given by each *105 witness on the night of the accident. For instance, although Deputy Gelvin sent a radio transmission describing the accident as being across from the dump, his description of the physical characteristics of the site were compatible only with plaintiffs’ location, ie., the fact that it was a curve in the road with a wooded area on one side and was exactly three miles from the intersection with Louisiana Highway 46. Conversely, the site urged by DOTD was a straight section of highway located 3.3 miles from the intersection. The trial judge rejected DOTD’s contention that Gelvin’s statements were biased, reasoning that statements made at the time of the accident could not have been tainted by the fact that Gelvin later became a client of plaintiffs’ attorney. Also, Gelvin’s |fldescription of the site as being across from the dump is explained by his testimony that the old dump takes up about four to five tenths of a mile, that it could be seen from the accident site, and that he referred to it because it was the nearest landmark. He also explained that the street address he gave was only an estimate, as he could not see any posted addresses in the area.
The trial judge discounted the testimony of Hebert and Nunez as not dispositive on the issue of where the truck entered the water, because Hebert testified only as to where he picked plaintiffs up, and Nunez testified only as to where he pulled the truck out. Noting that several witnesses who had observed the submerged vehicle at different times each testified that the vehicle’s headlights were pointing in a slightly different direction, the trial judge concluded on his own that the vehicle may have moved with the current.
Viewing the evidence as a whole, we do not find manifest error in the trial court’s conclusion regarding the location of the accident. This conclusion is reasonable and is supported by the totality of the evidence, the most compelling of which is the concurring testimony of nearly every witness, including Tuggle, who was indisputably a disinterested witness, that the accident happened in a curved, rather than a straight, section of the roadway. Moreover, having accepted plaintiffs’ accident location, we also do not find manifest error in the trial court’s determination that the accident was caused by a rut, or a defective condition of the roadway, which necessarily stems from the trial judge’s decision to credit the hntestimony of the plaintiffs, as well as to credit the testimony of one expert over that of another, which determinations are not unreasonable in light of the evidence.

SUFFICIENT NOTICE

On the issue of notice, plaintiffs presented the testimony of both current and former DOTD employees. Wallace Couture, a former parish maintenance superintendent whose jurisdiction included Delacroix Highway, identified the rut in photographs and testified that he had used shells to fill in the same rut during his tenure with DOTD. He stated, however, that the shells were only a temporary measure, and that just before he left his employ in 1994, he had noticed that the rut was five to six inches deep and in need of further repair. He resigned, however, before he could repair it. DOTD attempted to discredit Couture’s testimony by pointing out that he had resigned from his position at DOTD because it was discovered that he had been stealing asphalt.
Rita Knott, who replaced Couture as superintendent, testified that she inspected each of the highways in her jurisdiction every ten days, but did not notice any ruts in the specific area before the accident occurred. She stated that the maintenance manual used by DOTD recommended that ruts with depths, of three and one half to five inches be scheduled for repair, while those measuring over five *106 inches were termed “severe” and required immediate repair. She also identified photographs as showing repairs that were made to the area in question subsequent to the accident, in 1998.
InMarvin Hess, supervisor of Knott, testified that he inspects the roads in his jurisdiction every other month, and verbally refers any problems he sees to the superintendent of that area to be put on the regular maintenance schedule. However, there is no written documentation of this procedure, except when the work is actually done. Although he had observed shoulder ruts and drop offs in that section of Delacroix Highway from 1993 through 1997, he recalled no severe ruts (over five inches deep).
In determining that the plaintiffs had met their burden of proving notice, the trial judge stated that the one fact he gleaned from the testimony and photographic evidence was that drop offs or ruts have existed and still exist on Delacroix Highway. He further stated that he believed the rut in question was still visible in photographs of the scene after repairs were made.
In view of the evidence, we cannot say the trial court’s conclusion that DOTD had sufficient knowledge of the defective condition to trigger liability for its failure to repair was manifestly erroneous. We note that, although DOTD attempted to discredit Couture’s testimony, it did not present any witnesses to contradict it, and therefore the trial judge could have reasonably believed Couture, who stated that he did not bear any hi will towards DOTD.
Accordingly, for the reasons stated, we affirm the judgment of the trial court.
AFFIRMED.

. As is clearly indicated in the judgment, each of these amounts has already been reduced by 25% to reflect the fault of Greg Matlock, whom the other plaintiffs did not sue.