835 So.2d 919 (2003)
Yolanda Griffin HENDERSON, et al.
v.
NISSAN MOTOR CORPORATION, et al.
No. 02-CA-337.
Court of Appeal of Louisiana, Fifth Circuit.
January 14, 2003.
Rehearing Denied February 3, 2003.
*921 Thomas G. Wilkinson, Michael P. Ciaccio, Gretna, LA, and Jay M. Napolitano, New Orleans, LA, for plaintiffs-appellantsFred and Yolanda Henderson.
Richard P. Ieyoub, Attorney General, Kathi Vernaci Logan, G. Scott Vezina, Special Assistant Attorney Generals, Appeal Counsel for State of Louisiana, Department of Transportation & Development, Vezina And Gattuso, Gretna, LA, for defendant-cross-appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.

FACTS
On June 26, 1993, Fred Henderson ("Fred") was operating a 1998 Nissan 2000 SX on I-10 Eastbound in the left lane. Yolanda Henderson ("Yolanda") was a passenger in that vehicle. Christiane Schwartz ("Schwartz") was operating a 1992 Honda Accord on I-10 eastbound in the right lane. Fred was traveling about 55 miles per hour. He had just reduced his speed in anticipation of crossing the "Three Mile Bridge" just north of Laplace, Louisiana. Schwartz was traveling between 55 and 65 miles per hour. Before approaching the bridge, Schwartz crossed a portion of the roadway that had been repaired by the Louisiana Department of Transportation and Development just 4 months earlier. She testified at trial that she felt like her car had been struck from behind and she had run over something. She then lost control and veered into the left lane. She struck the right rear bumper of the Hendersons' car, causing his car to strike the guardrail and ricochet into the path of Schwartz's car. The passenger, Yolanda, was ejected from the car. As a result, she sustained serious, life threatening injuries. Yolanda and Fred filed a petition for damages naming Nissan, Schwartz, Schwartz's father as owner of the vehicle, two insurance companies and the Louisiana Department of Transportation and Development ("DOTD"). Barriere Construction ("Barriere") was later added as a defendant.
Barriere filed a motion for summary judgment arguing no liability because it had performed the work in accordance with plans furnished by the DOTD and DOTD had supervised and accepted the work. The trial court granted the motion for summary judgment. All other parties, except for the DOTD, settled with plaintiffs prior to trial.
A jury trial was then held and the jury found the highway to be unreasonably dangerous and the defect was a cause of the plaintiff's injuries. The jury also found Schwartz to be at fault in the cause of the accident. Fault was apportioned at 5% for the DOTD and 95% for Schwartz. The jury awarded Fred $125,000.00 for past mental anguish, $125,000.00 for past medicals and $125,000.00 for future medicals for a total award of $375,000.00. The jury awarded Yolanda a total of $3,200,000.00. This award included $1,000,000.00 for past pain and suffering and $1,000,000.00 for past mental anguish, $200,000.00 for past medicals, $500,000.00 for physical disability, and $500,000.00 for disfigurement.
Plaintiffs, Fred and Yolanda, then filed a motion for judgment notwithstanding the verdict arguing that the jury erred in allocating 95% fault to Schwartz and the jury erred in failing to award damages for future pain and suffering, past and future *922 loss of enjoyment of life, future mental anguish, past and future wage loss, loss of earning capacity, and future medical expenses. The trial court found that the allocation of fault and assessment of damages were questions of fact and that there was evidence upon which the jury may have concluded that Schwartz was negligent and the award of damages was within the jury's discretion. Therefore, the trial court denied the plaintiffs' motion and the jury verdict became the judgment of the court.
Plaintiffs now appeal the judgment arguing that the DOTD should have been held 100% at fault and Yolanda should have been awarded damages for future pain and suffering, future mental anguish, future medicals, past lost wages, loss of future earning capacity, and loss of enjoyment of life. They also argue that Fred should have been awarded damages for past pain and suffering, future pain and suffering, loss of enjoyment of life, and future mental anguish. The DOTD appeals arguing that it is not at fault in the cause of the accident.

DISCUSSION
A jury verdict is a factual finding and cannot be disturbed on appeal unless the trial court committed manifest error or a finding of fact is clearly wrong. Mart v. Hill, (La.1987) 505 So.2d 1120, citing Arceneaux v. Domingue, 365 So.2d 1330 (La. 1979).

Apportionment of Fault
At trial, the jury heard evidence from varying expert witnesses, who testified for both the defense and plaintiff. Those witnesses each formulated different opinions as to the cause of the accident. The plaintiff's expert, James Clary, testified that the "dip" in the highway could be unreasonably dangerous. Plaintiffs also presented the testimony of an accident reconstructionist, Dale Moore. The DOTD argues on appeal that Clary's testimony was not credible. He had no personal knowledge of the area and had only visited the site twice. The DOTD further argues that Moore's opinions were not supported by scientific evidence and his conclusions were vague. The DOTD presented Maurice Jordan as an expert in Highway Maintenance. Jordan testified that the road was not defective or hazardous to the motoring public after the patch was placed. The DOTD also presented David Hall as an expert in highway maintenance, design, safety, signing and accident reconstruction. Hall testified that there was no scientific evidence that the patch would have caused Schwartz to lose control of her vehicle and no evidence that the bouncing up and down would have caused her vehicle to move left. Hall further testified that the condition of the interstate was not unreasonably dangerous.
Deputy Blaine Wear of the St. John the Baptist Sheriff's office investigated the accident and testified at trial that there was an indentation or dip in the patch on the roadway. On his accident report, he noted this patch work was a contributing cause of the accident because it could cause someone to lose control of their vehicle.
After reviewing the testimonies presented at trial, we find the jury's verdict as to the apportionment of fault to be manifestly erroneous. We believe the DOTD's patch on the highway was a substantial cause of the accident. Therefore, we find the DOTD and Schwartz to each be 50% at fault in the cause of the accident.

Damages
Plaintiffs argue that the jury erred by not awarding the damages listed previously. First, Yolanda claims she is entitled to damages for past and future loss of enjoyment of life. She argues she is unable *923 to participate in those things she enjoyed before the accident, including sports. We find Yolanda is entitled to an award for loss of enjoyment of life and the jury was manifestly erroneous in failing to award damages for this loss. Yolanda testified at trial that she is unable to participate in activities like she did before the accident. She testified that she and Fred used to jog for exercise, but she is unable to do that now because of her injuries. Dr. Chad Millet, an orthopedic surgeon, testified that Yolanda has a permanent restriction in the motion of her left forearm and a permanent limp in her right leg, which could cause future arthritis in her lower back and/or hip. Dr. Millet testified that he would recommend that she not jog because it would accelerate the arthritis. Yolanda was also treated by Dr. Joseph Tramontana, a clinical psychologist. She told Dr. Tramontana that prior to the accident she was active and participated in jogging, walking, and riding bikes. After the accident, she was unable to participate in those activities. Therefore, we find she is entitled to an award for loss of enjoyment of life in the amount of $100,000.00.
Yolanda also argues she is entitled to damages for her loss of earning capacity because before the accident she was pursuing a career in business/banking and since the accident she decided to pursue a career in social work. She contends her earning capacity is less with a career in social work than with a career in banking/business. She testified at trial that her career change was the result of the injuries she suffered from the accident. She now has a scar on her face and a scar on her leg. She stated the scars attract attention and are embarrassing. She stated she cannot work in business/banking because she would be forced to deal with the public and would have no private time to attend to her medical needs. As a social worker, she is able to adapt her schedule to accommodate her physical and medical needs. We do not find that she is entitled to damages for loss of future earning capacity. She is fully capable of pursuing the career she had begun before the accident, but has chosen not to. She chose to return to school and obtain a different degree. Barney Hedgwood, a vocational rehabilitation counselor, testified that according to the Occupational Outlook Handbook, in 1997 the average salary of a social worker with a masters degree was $35,000. He further testified that in 1996, the median salary for an individual in the securities and financial services area would be $38,800. In comparison, the average salaries of these two careers are not vastly different. In addition, the injuries sustained from the accident are not precluding her from pursuing a career in business/banking. Therefore, we find the plaintiff is not entitled to damages for loss of future earning capacity.
Yolanda next contends she is entitled to lost wages which occurred as a result of her inability to work following the accident. Yolanda testified that prior to the accident she worked part time as a cashier in the Tiger Lair student union while attending school at Louisiana State University. She was to receive her undergraduate degree in August 1993, two months after the accident. Because of the accident she received her diploma while in the hospital. After the accident, she was unable to work for approximately six months. In January 1994, she returned to her part time job as a cashier at the Tiger Lair working 10 hours per week and earning minimum wage of $4.25 per hour. In the Fall of 1994, Yolanda returned to school to pursue a masters degree in social work. Yolanda is arguing that her lost wages for the six months following the accident should be based on the salaries of the jobs she had *924 been offered that were to begin after she graduated. She testified at trial that she had received two job offers, but had also considered pursuing an accounting program at LSU.
We find that Yolanda is entitled to past lost wages for the six month period of time she was unable to work. We further find that these lost wages should be calculated based upon the part time minimum wage job she had prior to the accident, and returned to in January 1994. We do not believe she is entitled to lost wages based upon the salaries of the job offers she had received prior to the accident because she provided no proof at trial that she intended to pursue one of those jobs. If she pursued the accounting program at LSU, then she would likely keep her part time job. Therefore, we find she is entitled to $1,020.00 for lost wages as a result of the accident.
We also find that Yolanda is entitled to damages for future pain and suffering. As of the date of trial, Yolanda continued to have swelling in her right leg, which is permanent, and has to wear a Jobst stocking to prevent fluid from collecting in her leg. Dr. Chad Millet, an orthopedic surgeon, testified at trial that Yolanda would have a permanent limp in her right leg and this would cause future arthritis in her lower back and hip. Based on the testimonies presented at the trial, we find Yolanda is entitled to $300,000.00 for future pain and suffering.
Further, we find that Yolanda is entitled to damages for future mental anguish. Following the accident, Yolanda was treated by Dr. Joseph Tramontana, a clinical psychologist. He testified that his last session with Yolanda was on June 13, 1997. At that time, he felt she was improving, but not fully recovered from the psychological illnesses she was suffering as a result of the accident. She still had some anxiety disorders. In addition, Yolanda continues to dislike her appearance because of the scarring caused by the accident. Therefore, we find Yolanda is entitled to $150,000.00 for future mental anguish.
In addition to the above, we have reviewed the jury verdict and the evidence presented at trial and will address Yolanda's damage awards for past mental anguish, past medicals, physical disability, and disfigurement. We believe the jury was manifestly erroneous in deciding the amounts of these awards and, therefore, we find that these damage awards should be reduced for the reasons which follow.
We find that Yolanda did suffer mental anguish as a result of the accident. However, we believe the award of $1,000,000.00 is contrary to the evidence presented. Yolanda was ejected from the vehicle and did suffer traumatic injuries. She treated with Dr. Tramontana, a clinical psychologist for three and a half years. He found that she suffered from severe major depression, secondary to physical trauma and generalized anxiety disorder. She was only seen as an outpatient once per week for about six months and then sporadically for the remainder of the three and a half years. In addition, she was distressed about her appearance. Although we find that Yolanda suffered substantial mental anguish as a result of this accident, we believe the jury's award is too high. Therefore, we find Yolanda is entitled to $500,000.00 for her past mental anguish.
We also believe the jury's awards for Yolanda's physical disability and disfigurement are contrary to the evidence presented. According to Dr. Robert Allen, Yolanda will suffer a 30-40% permanent partial disability to her right leg. She will also have a permanent drop foot and a *925 permanent limp. Dr. Allen also testified that Yolanda has scarring on 9% of her body. This includes scars on her left leg, abdomen, left thigh, buttocks, face and back. Based on the testimonies presented at trial, we find Yolanda is entitled to $100,000.00 for physical disability and $200,000.00 for disfigurement.
We also note that the jury awarded $200,000.00 to Yolanda for past medicals. Yolanda has stipulated that her past medicals are only $199,177.82. Therefore, we make that correction to the judgment as well. Further, we agree with and affirm the awards for past pain and suffering and future medicals.
We have also reviewed the damage awards for Fred and agree and affirm the award for loss of enjoyment of life. We also note that the jury awarded Fred $125,000.00 for past medicals. However, he has stipulated that his past medicals were only $5,730.25 and we make that correction to the judgment. We also review the other awards to Fred with the following analysis.
We believe Fred is entitled to an award for past pain and suffering. He was injured in the accident and was treated for injuries to his ankle, knee and lower back. As of the date of trial, Fred testified he was still hurting and that his knee hurt constantly. Therefore, we find that Fred is entitled to $20,000.00 for past pain and suffering. We also find that he is entitled to future pain and suffering. Dr. S. Daniel Seltzer treated Fred for his injuries. Dr. Seltzer recommended arthroscopy surgery on his knee. Since this surgery is likely to be necessary in the future, we find that Fred is entitled to $10,000.00 for future pain and suffering.
Fred is also entitled to future mental anguish. He was treated by Dr. Tramontana and was diagnosed with post-traumatic stress disorder, hyper vigilance and survivor's guilt. He was treated until July 14, 1995. At that time, Dr. Tramontana felt he was improved, but not fully recovered. Therefore, we find he is entitled to $25,000.00 for future mental anguish.
Even though Fred suffered from the mental disorders mentioned above, we find the jury's award for past mental anguish to be contrary to the evidence. He was only treated by Dr. Tramontana sporadically. He did suffer the unfortunate experience of finding his fiancé after being ejected from the car and suffers nightmares about the ordeal. Therefore, we find Fred is entitled to $90,000.00 for past mental anguish.
Finally, we find the jury's award of future medicals for Fred to be contrary to the evidence. As discussed above, Dr. Seltzer recommended future arthroscopy surgery. He estimated this surgery would cost from $4,000-6,000.00. No other evidence of future medicals was presented. The jury awarded $125,000.00, however, we find Fred is only entitled to $6,000.00 for future medicals.
In accordance with the above, we amend the jury's apportionment of fault and damage awards. We find the DOTD and Schwartz to each be 50% at fault in the cause of the accident.
Further, we amend the jury's damage awards. We find Yolanda is entitled to $1,000,000.00 for past pain and suffering, $300,000.00 for future pain and suffering, $500,000.00 for past mental anguish, $100,000.00 for loss of enjoyment of life, $150,000.00 for future mental anguish, $199,177.82 for past medicals, $100,00.00 for physical disability, $200,000.00 for disfigurement, and $1,020.00 for past lost wages. The total damages awarded to Yolanda are $2,550,197.82. We also find that Fred is entitled to $20,000.00 for past *926 pain and suffering, $10,000.00 for future pain and suffering, $90,000.00 for past mental anguish, $25,000.00 for future mental anguish, $5,730.25 for past medicals and $6,000.00 for future medicals. The total damages awarded to Fred are $156,730.25.
In accordance with the above, we amend the trial court's judgment and, as amended, we affirm the judgment.
JUDGMENT AMENDED; AS AMENDED, AFFIRMED.