869 So.2d 62 (2004)
Yolanda Griffin Henderson, wife of/and Fred HENDERSON, LeRoy Griffin and Edna Poydras
v.
NISSAN MOTOR CORPORATION U.S.A. and/or Nissan Motor Company, Ltd., State of Louisiana Department of Transportation and Development, Christian K. Schwartz, John S. Schwartz, CNA Insurance Group and United Service Automobile Association.
No. 2003-C-606.
Supreme Court of Louisiana.
February 6, 2004.
Rehearing Denied April 23, 2004.
*64 Charles C. Foti, Jr., Attorney General, Gerard S. Vezina, Kathi V. Logan, Vezina & Gattuso, for applicant.
Michael P. Ciaccio, Vincent J. Glorioso, Jr., New Orleans, Thomas G. Wilkinson, Gretna, Jay M. Napolitano, New Orleans, for respondent.
JOHNSON, Justice.
The Louisiana Department of Transportation and Development (DOTD) filed this writ application, and we granted certiorari in order to determine whether the Court of Appeal applied the correct standard of review when it found that the jury was clearly wrong or manifestly erroneous in its apportionment of 5% of the fault for a motor vehicle accident to the DOTD and reassigned the DOTD 50% fault. For the following reasons, we conclude that the Court of Appeal misapplied the manifest error-clearly wrong standard, and reinstate the original jury verdict.

FACTS AND PROCEDURAL HISTORY
This case arises out of a two-vehicle accident involving Fred Henderson and his then-fiance Yolanda Griffin Henderson, and Christiane Schwartz, who was traveling in a separate vehicle. On July 26, 1993, the Hendersons were traveling eastbound in the left lane of Interstate 10 in Mr. Henderson's 1988 Nissan 2000 SX. Mrs. Henderson was sitting in the passenger seat and wearing a seat belt. Ms. Schwartz was operating a 1992 Honda Accord on I-10 eastbound in the right lane. Mr. Henderson testified that he was traveling approximately 55 miles per hour and was reducing speed in anticipation of crossing the "Three Mile Bridge" just north of Laplace, Louisiana. Ms. Schwartz, according to her testimony, was traveling between 55 and 65 miles per hour. The speed limit at the time of the accident was 65 miles per hour. At trial, Mr. Henderson testified that the weather had been slightly misty earlier in the day, although it was not raining at the time of the accident. Neither Mrs. Henderson, Ms. Schwartz, or Deputy Blaine Wear, who investigated the accident for the St. John the Baptist Sheriff's Office, testified as to the weather conditions present at the time of the accident.
As she approached the bridge, Ms. Schwartz crossed a portion of the roadway that had been repaired by the DOTD four months earlier. This stretch of roadway at mile marker 201.9 was repaired by Barriere Construction Company, which had *65 successfully bid to repair the buckling concrete which had become cracked and uneven. The concrete patch was approximately 20 ft. long by 12 ft. wide in the eastbound right lane of the roadway. At trial, Ms. Schwartz testified that she felt as though her vehicle had either been struck from behind or she had run over something in the roadway. She then lost control of her vehicle and veered into the left lane. Ms. Schwartz struck the right rear bumper of the Hendersons' car, causing it to strike the guardrail and ricochet back into the path of her vehicle. Ms. Schwartz then struck the Henderson vehicle for the second time, and Mrs. Henderson was ejected from the vehicle. Mrs. Henderson was transported by ambulance to River Parishes Hospital, where she stayed for several days, and was subsequently transferred to University Hospital in New Orleans where she was hospitalized for a month and a half. As a result of the accident, Mrs. Henderson sustained serious, life threatening injuries, including a traumatic near amputation of her lower left leg below the knee. As a result of her extensive injuries, Mrs. Henderson underwent multiple reconstructive surgeries, which included grafting muscles, arteries and skin from her back in order to reattach her leg. Consequently, Mrs. Henderson suffered extensive scarring, disfigurement and deformity in several areas of her body, especially her left leg. She experienced a long period of rehabilitation following re-attachment of the limb and her recovery was wrought with anxiety and depression.
The Hendersons filed a petition for damages naming Nissan Motor Corporation, Schwartz, Schwartz's father as the owner of the vehicle, USAA Insurance Company and CNA Insurance Group, and the DOTD as defendants. In January of 1999, the Hendersons added Barriere Construction Company, which provided the labor, equipment, materials, and supervision for the repair work on the patch as an additional defendant. Barriere filed a motion for summary judgment, which was granted by the trial court, arguing it had no liability because the work was performed in accordance with plans and specifications furnished by the DOTD, and the DOTD supervised and accepted the work. With the exception of the DOTD, all other parties settled with the plaintiffs prior to trial.
Trial before a jury was then held from April 9 through April 12, 2001, with the jury returning a verdict in favor of the Hendersons. After denial of plaintiffs' motion for a judgment notwithstanding the verdict (JNOV) and alternative motion for new trial, on the issues of the apportionment of fault and failure to award damages for proven elements of plaintiffs' claims; the trial court entered judgment in accordance with the jury's verdict.
Both DOTD and the Hendersons timely appealed the trial court's judgment to the Louisiana Court of Appeal for the Fifth Circuit. DOTD appealed the jury's apportionment of fault and the quantum of damages awarded by the jury. Plaintiffs appealed the jury's finding of fault on the part of Ms. Schwartz, and alternatively, the jury's mis-apportionment of fault, as well as the failure of the jury to make awards for specific items of damage that were proven at trial. The Court of Appeal, after reviewing the evidence presented at trial, found that the jury was clearly wrong and committed manifest error in apportioning only 5% of the fault to the DOTD and reapportioned fault equally between Schwartz and the DOTD. The Court of Appeal also found manifest error on the part of the jury with respect to several of the damage awards, and modified those *66 awards.[1] The DOTD applied for rehearing from the First Circuit Court of Appeal, which denied their application.[2]
DOTD timely sought a writ of certiorari from this Court to review the Fifth Circuit's modification of the apportionment of fault, which this Court granted.[3] The DOTD did not seek review of the quantum awarded to either plaintiff, therefore, the Court of Appeal's decision is final on the issue of quantum.

DISCUSSION
In its second assignment of error, which we discuss first, the DOTD alleges that the jury erred in assigning even nominal fault to the DOTD for its role in designing and executing the patch. Therefore, we must determine whether the DOTD has any liability to the plaintiffs under the theories of strict liability or negligence.

Strict Liability
Under La. Civ.Code Art. 2317 "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." This theory of strict liability is applicable where damages are caused by instrumentalities in one's custody or control. Petre v. State ex rel. Dept. of Transp. and Dev., 01-0876 (La.4/3/02) 817 So.2d 1107, 1110. Generally, in claims alleging strict liability, as opposed to claims of negligence, the plaintiff is relieved of proving that the owner or custodian of the thing that caused the damages knew or should have known of the risk involved. Petre, 817 So.2d at 1110. In Petre, this Court found that La. Rev.Stat. 9:2800 limited the liability of public entities for the damage caused by things in their custody, and public entities will only be held liable when they had actual or constructive knowledge of the defect and a reasonable opportunity to remedy the defect yet failed to do so. Id. As a State agency the DOTD is subject to limited liability under Art. 2317 as a result of La. R.S. 9:2800.[4] Since La. R.S. 9:2800 limits the liability of State agencies with regard to strict liability, the duty owed by the DOTD under the theories of strict liability and negligence is the same. Id.

Negligence
Under a theory of negligence, liability hinges on whether the defendant has breached a duty which he owes to the plaintiff. See Lockett v. State, Dept. of *67 Transp. and Dev. 02-0651 (La.App. 1 Cir. 4/2/03), 844 So.2d 949, 954. Generally, the DOTD's duty to its travelers is to keep the state's highways in a reasonably safe condition for persons exercising ordinary care. Id. An unreasonably dangerous condition in a roadway results in a breach of duty by the DOTD. Id. To establish a breach of the DOTD's duty, the following requirements must be met:
(1) the thing which caused the damage must be in the care or custody of the defendant;
(2) a hazardous condition existed;
(3) DOTD must have actual or constructive knowledge of said condition and;
(4) DOTD must fail to take corrective action within a reasonable period of time.
See Graves v. Page, 96-2201(La.11/7/97), 703 So.2d 566, 571.
The jury found, considering the evidence as a whole, that the plaintiffs met their burden of proving the four elements of a negligence claim. First, with regard to custody, plaintiffs proved that the highway was constructed, maintained, and inspected by the DOTD. Second, regarding the defectiveness of the patch, plaintiffs offered testimony from two experts to prove their theory of the case. Plaintiffs called expert witness James Clary, a civil engineer and land surveyor who had been qualified several hundred times as an expert in highway safety, design, maintenance, signing and surveying. The survey prepared by Clary showed that from the highest point to the lowest point in a 10 foot section of roadway, there was a dip or depression of 5½ inches. In Clary's opinion, such a deep depression could lead to a loss of control when a vehicle was traveling at high speeds in wet weather. Specifically, Clary testified that traveling through the depression created "bouncing" that could frighten a driver and cause him to lose control of a vehicle. Clary testified that the patch did not meet the safety specifications outlined by the DOTD in their own "gold book," which contains the "Standard Specifications for Roads and Bridges." According to Clary, the patch was unequivocally unsafe.
Plaintiff's second expert, accident reconstructionist Dale Moore, died before the case went to trial and therefore his testimony was presented by deposition. Moore opined that the patch caused lateral instability (side to side movement) in some vehicles, and that lateral instability could result in driver over-correction with a resulting loss of control of the vehicle. Moore testified that a vehicle traveling 60 mph is traveling 88 feet per second, and therefore, Schwartz traveled the 112 feet between where she initially encountered the patch and the Henderson vehicle too quickly to avoid the accident. Moore concluded that it was "more probable than not" that the patch caused the accident.
Finally, plaintiffs examined several DOTD employees to satisfy the notice requirement. They testified that the department was aware that the patch was a problem, but budgetary constraints prevented the DOTD from repairing a larger section of the roadway, which plaintiffs argued would have prevented the accident. Stephen Perilloux, an engineer with the DOTD, testified that there were dips all over this roadway. He further testified that the patches were not intended to take the dips out. The bid specifications required repair only where the concrete had failed. Maurice Jordan, DOTD district administrator, testified that he was informed by the Secretary of the DOTD that this area was a problem. Jordan further testified that prior to the crash he was aware that a section of the road much larger than the 20 ft. patch needed to be resurfaced, however, the DOTD did not have the funds *68 necessary to do the complete job. It is important to note that this repair project came in under budget and therefore, the DOTD did not spend all of the allocated funds available to pay Barriere Construction Co. to repair this portion of the highway. Based upon the evidence presented, the jury found that the DOTD violated its duty to insure that the highway was reasonably safe for persons exercising ordinary care and reasonable prudence.

II.
In its first assignment of error, which we now address, the DOTD alleges that the court of appeal erred by misapplying the manifest error rule when it found the jury's original apportionment of fault clearly wrong. We agree, and find that the Court of Appeal did commit error in modifying the original apportionment of fault assigned by the jury. The facts of this case clearly show that the conclusions reached by the jury were reasonable based upon the evidence.

The Standard of Review
An appellate court may not set aside a jury or trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Stobart v. State, Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). The facts in Stobart are analogous to those present in the instant case, therefore it is beneficial to review the facts considered by this Court while deciding Stobart. While crossing a bridge, Mrs. Stobart attempted to traverse from the left to the right lane, and as she exited the bridge, lost control of her vehicle. Id. at 881. Her vehicle rolled over several times before coming to a stop and Mrs. Stobart was seriously injured. Id. Mrs. Stobart, along with her husband, filed suit against the DOTD, claiming that a defect in the road caused her to lose control of her truck. Id. The trial judge apportioned fault at 50% to the DOTD and 50% to Mrs. Stobart. Id. The court of appeal reversed, finding that the "sole reason for the accident was Stobart's failure to maintain control of her vehicle", the evidence presented at trial failed to establish that a defect existed in the roadway, and further, if a defect did exist, that plaintiffs failed to prove by a preponderance of the evidence that the DOTD had actual or constructive notice of the defect. Id. at 881-82. This Court reversed and reinstated the findings of the trial court, and further, articulated the now well-established doctrine that a trial court's factual findings should not be reversed on appeal absent manifest error. Id. at 882. In Mart v. Hill, 505 So.2d 1120 (La.1987) this Court articulated a two-part test to guide the lower courts when contemplating the reversal of a trial court's factual determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

Mart v. Hill, 505 So.2d at 1127.
The test articulated in Mart v. Hill which guided this Court's findings in Stobart requires that even where the reviewing court may believe that its own evaluations and inferences are more reasonable than the fact-finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal where the record merely demonstrates conflicting testimony as to the facts at issue, and the fact finder chooses to believe one version, rather than the other. Stobart, 617 So.2d at 882.
There is no legitimate conflict in testimony where documents or objective evidence so contradict the witness's story, *69 or the story presented by the witness is so internally inconsistent or implausible on its face, that a reasonable fact-finder could not give credence to the witness's testimony. Id. Faced with such circumstances, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Id. However, where a conflict exists in the testimony, the issue to be resolved by the reviewing court is not whether the trier was right or wrong, but whether the decision reached by the trier was reasonable. Id at 882-83.
The manifest error-clearly wrong standard of review is based upon the recognition of "the trial court's better capacity to evaluate live witnesses, as compared with the appellate court's access only to a cold record, but also upon the proper allocation of trial and appellate functions between the respective courts." Id. at 883. See also Canter v. Koehring Co., 283 So.2d 716 (La.1973). Accordingly, where two permissible views of the evidence exist, the fact-finder's choice between them cannot be manifestly erroneous or clearly wrong. Id. Finally, the trial court need not choose between competing expert testimony in forming its opinion where "the facts alone provide a basis for the trial court's decision." See Theriot v. Lasseigne, 93-2661, (La.7/5/94) 640 So.2d 1305, 1313.
We first address the jury's finding that the patch placed by the DOTD contributed to Ms. Schwartz losing control of her vehicle. Ms. Schwartz testified that she lost control of her car as a result of traveling through the patch. According to Ms. Schwartz, she was traveling at 60 to 65 mph, was not under the influence of drugs or alcohol, and was not overly tired while on the road that day. She also testified that her 1992 Honda Accord was only one year old and she had never experienced problems with her suspension or front end. In addition, Ms. Schwartz described her experience as she traversed the patch, and testified "as my car was traveling it went down through the dip and as it came up my car started to wobble and shake and it felt like almost my tires could have possibly come off the ground briefly." She then testified that even though she attempted to maintain control of her car, the accident took place in a manner of seconds and she did not have time to veer, swerve, or brake to prevent the accident.
Further, the jury heard testimony from Deputy Wear, who testified that he cited Ms. Schwartz for a failure to maintain control of her vehicle and for careless operation. He listed the patch in the roadway as a contributing factor in causing the accident. Deputy Wear testified as to his impressions of the patch, "In the patch work itself, there was an indentation, which I call a dip, and then came up to a slight lip going onto the regular I-10 that had not been touched." He concluded that the patch "could have contributed to her [Ms. Schwartz] losing control of her vehicle." Deputy Wear also testified that he met with James Black, an independent claims adjuster, some months after the accident. Black was assigned by the DOTD to interview Deputy Wear and photograph the scene. Deputy Wear testified that as the two men watched cars traverse the patch, they both noticed that cars were dipping significantly as they traveled over the patch. Mr. Black told Deputy Wear that he would mention the dipping in his report to the State.
The testimony presented by Ms. Schwartz and Deputy Wear is similar to that considered by the trial court in Stobart. In Stobart, both Mrs. Stobart and Officer Horton, who investigated the accident, testified regarding the presence of potholes in the road. Stobart, 617 So.2d at *70 883. This Court determined that the testimony heard by the trial court in Stobart was enough to constitute a "reasonable factual basis for the finding of the trial court" that a defect existed in the road. Id. at 884.
In addition to hearing testimony from the parties involved, the jury also reached its conclusions after considering the testimony of the plaintiff's expert witnesses, Clary and Moore, that the patch was a significant factor in contributing to the accident.
On cross examination, the DOTD challenged the survey conducted by the plaintiffs' experts as inherently flawed and unworthy of credence because the two men failed to secure a police escort while conducting their survey. As a result, their measurements were taken during uninterrupted interstate traffic flow, with the two men darting in and out of traffic. The DOTD argued that performing the survey under these conditions resulted in a flawed survey with unreliable results. The survey conducted by defense expert Darvin Ferguson of Ferris Engineering found a maximum deviation of 1½ inches within the patch. Further, DOTD argued that the ultimate fact established by the plaintiffs' expert was that the accident was caused by driver error, because Schwartz became unreasonably startled when she encountered the patch and over-corrected her steering wheel, resulting in her vehicle crossing over to the adjoining lane and striking the Henderson vehicle.
DOTD argued that their use of a police escort to re-route traffic resulted in a more accurate and therefore, more credible survey. The major challenge to Ferguson's testimony was the fact that the survey was conducted in August of 2000, seven years after the accident occurred.
The jury also considered testimony from David Wayne Hall, DOTD expert in the fields of highway maintenance, design, safety, signing, and accident reconstruction. Hall testified that the patch's effect on cars traveling across it was not severe enough to result in a loss of control and therefore be considered an unreasonably dangerous condition. Additionally, Hall relied upon a study conducted by the Traffic Institute at Northwestern University, which concluded that bumps and potholes in the road do not result in lateral instability, which Dale Moore concluded was a factor in Ms. Schwartz's loss of control. Hall further testified that "at highway speeds the forces acting on a vehicle as a result of striking an isolated bump are vertical and longitudinal," which means that a vehicle will experience up and down movement, but will not veer from its path.
Plaintiffs also argued that the failure of the DOTD to erect a "bump" or "dip" sign led to the patch being an unreasonably dangerous condition. Hall testified that a sign was not necessary. Hall stated that a warning regarding impending surface irregularities is only necessary where vehicles "bottom out" and the undercarriage of the car strikes the pavement. Hall testified that vehicles were not bottoming out upon encountering the patch, and presented a videotape that he filmed as evidence that the vehicles were bouncing up and down, but were not veering from left to right. Thus, according to DOTD expert Hall, the patch was not a contributing factor to Ms. Schwartz losing control of her vehicle and striking plaintiffs. We note that this videotape of the accident scene was filmed five years after the incident occurred.
Thus, in reaching its conclusions regarding the unreasonably dangerous nature of the patch, the jury considered the testimony of the parties involved in the accident, as well as experts from both sides. The jury also viewed photographs of the patch, *71 surveys of its depth, and the videotape of vehicles traversing through it. While the surveys conducted resulted in different measurements, plausible explanations were given for the variations. The determination of which evidence is more credible is most appropriately decided by the trier of fact.
In Stobart, this Court held that the reliance of the trial court upon the testimony of Mrs. Stobart and Officer Horton that a defect existed, even where the defect was not apparent in photographs and on a videotape was not manifest error. (See also Matlock v. State, Through Dept. of Transp. and Dev., 00-0350 (La.App. 4 Cir., 2/21/01), 782 So.2d 100, 105; Updegraff v. State, Through Dept. of Transp. and Dev., 01-1048 (La.App. 4 Cir., 10/2/02), 828 So.2d 693, 700). Where, as here, a conflict in the evidence exists and neither party presents evidence that is wholly inconsistent, implausible on its face or unbelievable in light of objective evidence, the appellate court must defer to the fact-finder's decision unless that decision is manifestly erroneous or clearly wrong. In this case, the fact-finder was faced with two permissible views of the evidence and decided that the patch minimally contributed to Ms. Schwartz losing control of her vehicle and striking the plaintiff. Accordingly, the jury's decision was not manifestly erroneous or clearly wrong and we therefore reinstate the original apportionment of fault assigned by the trial court.

DECREE
For the foregoing reasons, we reverse the decision of the Court of Appeal and reinstate the allocation of fault assigned by the jury.
NOTES
[1] Henderson v. Nissan Motor Corp., 02-337 (La.App. 5 Cir. 1/14/03), 835 So.2d 919.
[2] Id. (reh'g denied 2/3/03).
[3] Henderson v. Nissan Motor Corp., 03-0606 (La.5/9/03), 843 So.2d 383.
[4] A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.

B. Except as provided in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence and the public entity has a reasonable opportunity to remedy the defect and has failed to do so.
C. Constructive notice shall mean the existence of facts which infer actual knowledge.
D. A violation of the rules and regulations promulgated by a public entity is not negligence per se.
E. "Public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials and employees of such political subdivisions. Added by Acts 1985, No. 454 Sec 1 eff. July 12, 1985.