ROBERT A. CHAISSON, Judge.
12This is an appeal by Michael Paul Carreras and Julie Carreras, plaintiffs-appellants, from a judgment in favor of Jefferson Parish Hospital Service District Number 2, d/b/a/East Jefferson General Hospital, defendant-appellee, in this slip and fall case. For the following reasons, we affirm the judgment.
FACTS AND PROCEDURAL HISTORY
On January 19, 2004, Michael Carreras and his wife Julie were at East Jefferson General Hospital where their daughter was to undergo surgery. When she was taken to the operating room, the Carreras-es went down to the hospital cafeteria for breakfast. Mrs. Carreras got her tray of food and proceeded toward the cashier, where she ran into an acquaintance ahead of her in line and began chatting. Mr. Carreras also got a tray of food and then stopped at the beverage ¡¡¡counter for a glass of milk. As he turned toward the cashier, he slipped on some butter and jelly on the floor and fell.
The cafeteria staff immediately went to his assistance and notified hospital security of the accident. Rene Edwards, Supervisor of Security, testified that he got the initial call at 8:15 a.m., and reached the cafeteria at 8:20 a.m. By the time he arrived, the cafeteria staff had already cleaned the floor, but he observed butter and jelly on Mr. Carreras’s shoe. He took a statement from Mr. Carreras and offered to take him to the emergency room. Mr. Carreras said that he wanted to finish breakfast, so Mr. Edwards went back to his office. He got a second call informing him that Mr. Carreras was ready to go to the emergency room, so he returned to the cafeteria at 8:47 a.m., placed Mr. Carreras in a wheel chair, and brought him to the emergency room. The emergency room record shows that he was admitted at 9:16 a.m. There is no dispute that the accident occurred and that there was butter and jelly on the floor.
The proceeding was bifurcated, and the issue of liability was tried before the judge. There was a dispute in the case as to the precise time that the accident occurred. Both Mr. Carreras and his wife testified that the accident happened at about 8:45 a.m. They based this estimate on their recollection that their daughter was taken to the operating room at about 8:00 a.m., and that they then had a discussion about going down to breakfast. They both estimated that by the time they had actually decided to go down to the cafeteria, plus the time spent selecting food and proceeding to the cashier, that it must have been close to 8:45 a.m. Rene Edwards, the security person, testified that he drew up his report of the incident before leaving work that day. That report showed that he got the first call at 8:15 a.m. and arrived at the scene at 8:20 a.m. He then left while Mr. Carreras ate [4breakfast, and was then called a second time and arrived in the cafeteria at 8:47 a.m.
Another issue involves whether there were other people in the cafeteria at the timé that might have dropped the butter and jelly. Again, Mr. Carreras and his wife testified that there was no one else in the area where the slip occurred, the implication being that the foreign substances had been present for a significant period of time. However, Mrs. Carreras also testified that there was an acquaintance of hers in line for the cashier, and that she was chatting with her when Mr. Carreras fell. She also testified that she did not see any butter or jelly on this person’s tray. Latoya Shine, a cafeteria worker who was working at the grill on the morning in question, testified that when Mr. Carreras fell she started to go to his aid, but there were several workers who got to him first. *568 She said that she had about ten people m line at the time, so she returned to her work station. She also said that between 8:00 a.m. and 8:30 a.m. the cafeteria is usually very busy.
The hospital introduced its Policy and Procedures Manual which contained instructions for cashiers in the cafeteria to inspect the floors every half hour. It was also shown that a log was kept at the cashier station which the cashiers had to initial after each half hour inspection. The log for the day in question was initialed for each pertinent half hour by the cashier on duty that day. Ms. Shine testified that the half hour checks were always done by either the cashiers or the “bussers,” and she remembered that the checks were done by the cashier on the morning in question at 8:00 a.m. and 8:30 a.m. She also said that newly hired people were given the safety handbook which emphasized keeping the floors safe, and that additional safety meetings were conducted every two months.
Shirley Moore, the cashier on duty, testified by way of deposition. Her recollection of events was uncertain, and she often stated that she could not |flremember the details of the incident. It was clear that she remembered being on duty that morning. It was also clear that she did not see Mr. Carreras fall, and that she could not see the floor where he fell from her position at the cash register. She was less certain about the half hour inspections. She said that there was another cashier on duty that morning and that this person had taken a break at 7:55 a.m. or 8:00 a.m. She thought that she had made an inspection right before the other cashier took her break. She was uncertain about when the other cashier returned, but said that it was probably a half hour later, and that she would have made the 8:30 a.m. inspection after the other cashier got back. Later in her testimony she said that she did make the 8:00 a.m. and 8:30 a.m. inspections timely as indicated by her initials on the log. In none of her inspections did she observe any foreign substances on the floor. She also said that she did not remember seeing other people in the area where the fall occurred for some time before it happened.
On the basis of the above evidence, the trial judge found that plaintiffs had failed to show that the defendant hospital had actual or constructive knowledge of the foreign substances on the floor. She particularly noted that Ms. Moore had not found butter or jelly on the floor during her 8:00 a.m. inspection, and that because she could not see the area of the fall from her position at the register she would not have been able to observe any subsequently dropped substances. She further found that plaintiffs had not shown that the foreign substances were on the floor for such a time that with reasonable diligence the hospital would have discovered them. It is implicit in the above findings that she found that the accident occurred at 8:15 a.m. as shown in the security report and testified to by Rene Edwards. She accordingly entered judgment in the hospital’s favor, and this appeal followed.
| fiLAW AND ANALYSIS
In their first assignment of error, plaintiffs contend that the district court erred in finding that the merchant’s slip and fall law contained in La. R.S. 9:2800.6 applied to this case. We agree that La. R.S. 9:2800.6 is not applicable to this case. However, it is apparent that the trial court’s reference to that statute was inadvertent. Immediately after referencing La. R.S. 9:2800.6, the trial judge referenced this court’s decision in Blount v. East Jefferson General Hospital, 04-407 (La.App. 5 Cir. 10/12/04), 887 So.2d 535, which we find is the proper controlling *569 authority, and conducted her analysis in accordance with the legal precepts contained therein.
East Jefferson Parish Hospital Service district Number 2 is a public entity and is therefore subject to the provisions of La. R.S. 9:2800, which provides in pertinent part:
B. Except as provided for in subsection A of this section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2817 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
C. Constructive notice shall mean the existence of facts that infer actual knowledge.
In this case, plaintiffs have asserted a claim under theories of both negligence and strict liability. As to their claim under a strict liability theory, La. R.S. 9:2800 clearly requires that the public entity defendant have actual or constructive notice of the particular vice or defect prior to the occurrence. Plaintiffs contend, however, that as to their claim under a theory of negligence, their burden of proof is different. Specifically, plaintiffs contend that they need only show that a fall occurred and injury resulted from a foreign substance on the | premises, and that the burden then shifts to the hospital to exculpate itself from the presumption of negligence. We do not find this to be a correct statement of the law.
In Blount, this Court stated:
Under the negligence standard, a hospital owes a duty to its visitors to exercise reasonable care to keep the premises in a safe condition commensurate with the particular circumstances involved; but the duty owed is less than that owed by a merchant. Under a negligence theory, plaintiff must also prove that the owner or custodian knew or should have known of the unreasonable risk of harm posed by the property. Under a theory of strict liability, the hospital is liable for defective things in its custody only upon a showing that it knew or, in exercise of reasonable care, should have known of the defect which caused the damage and failed to correct it with reasonable diligence.
Thus, under either theory of liability, plaintiff has the burden to prove actual or constructive notice of defendant. In order to maintain a claim for damages caused by the condition of things within the care and custody of a public entity, the complainant has the burden of proving that the public body had actual or constructive notice of the hazard and had a reasonable opportunity to remedy the condition, but failed to do so. (Citations omitted). Blount at 537-38.
Similarly, in Fontenot v. Patterson, Ins., 2009-0669 (La.10/20/09), 23 So.3d 259, 267-268, the Louisiana Supreme Court addressed claims in negligence and strict liability against a public entity as follows:
Regarding the DOTD’s liability, the pertinent legal principles are somewhat different insofar as tort claims may be pursued against the public entity under La. C.C. art. 2317 and La. R.S. 9:2800 strict liability, as well as in negligence pursuant to La. C.C. art. 2315. Henderson v. Nissan Motor Corp., 03-606, pp. 5-6 (La.2/6/04), 869 So.2d 62, 66-67. When addressing an action under either theory, the legal analysis is the same. The plaintiff bears the burden of showing that: (1) the DOTD had *570 custody of the thing that caused the plaintiffs injuries or damages; (2) the thing was defective because it had a condition that created an unreasonable risk of harm; (3) the DOTD had actual or constructive knowledge of the defect and did not take corrective measures within a reasonable time; and (4) the defect in the thing was a cause-in-fact of the plaintiffs injuries. Netecke v. State ex rel. DOTD, 98-1182, 98-1197, p. 7 (La.10/19/99), 747 So.2d 489, 494.
[ RUnder either a negligence or strict liability theory, plaintiffs are required to prove actual or constructive notice of the public entity defendant. The trial court applied the correct law in this matter and we therefore decline to review the matter under a de novo standard. Because the judgment in this case is based on the factual determination that the hospital did not have actual or constructive notice of the foreign substances on the floor, the standard of review is manifest error. Stobart v. State through DOTD, 617 So.2d 880 (La.1993).
In Stobart, the court explained that the analysis to be used by the reviewing court is whether the factual determinations made by the factfinder are reasonable in light of the entire record. It went on to state that “where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.” (Id. at 883).
Here, there is no evidence to show that the hospital had actual knowledge of the butter and jelly on the floor, so the inquiry is whether it had constructive knowledge of the condition. Constructive knowledge can be found if the condition which caused the injury existed for such a period of time that the defendant, in the exercise of due diligence and ordinary care, must have known of the problem and could have guarded the public from injury. Blount v. East Jefferson General Hospital, supra at 538.
There was ample testimony and evidence that the accident occurred at 8:15 a.m. as testified to by the security officer and further verified by his contemporaneous written report. The plaintiffs’ asserted that it was more probably at 8:45 a.m. The factfinder implicitly found that the proper time was 8:15 a.m., and this finding was clearly reasonable on the entire record. Regardless, whether Mr. Carreras’s fall occurred at 8:15 a.m. or 8:45 a.m., the evidence was clear by the plaintiffs’ own admissions that at least one other customer was in the cafeteria l3checkout line at the time of his fall, thereby negating their argument that there was no one else in the area for at least thirty minutes before the accident who could have dropped the butter and jelly on the floor. The hospital put into evidence its procedures manual which required cashiers to inspect the floors every half hour. Shirley Moore, the cashier on duty, said that she made an inspection at either 7:55 a.m. or 8:00 a.m., and the log at her register showed that she initialed it at 8:00 a.m. Latoya Shine, another cafeteria employee on duty that morning, said that she remembered a cashier making an inspection at about 8:00 a.m. Ms. Shine also said that safety meetings were held every two months and floor cleanliness was always mentioned. Findings that the accident occurred at 8:15 a.m., that the floor had been inspected at about 8:00 a.m. and no problems noted, and that Ms. Moore could not have seen any subsequently spilled substances on the floor from her station at the cash register, all support the ultimate conclusion that the condition had not existed for such a time that the hospital must have known of the problem and failed to correct it. Because these factual matters are all reasonably supported by the entire record, we may not substitute *571 our judgment for that of the trier of fact. Stobart v. State through DOTD, supra. Accordingly, we affirm the judgment of the trial court.
For the foregoing reasons, the judgment in favor of Jefferson Parish Hospital Service District Number 2 dismissing with prejudice the claims of Michael Paul Carr-eras and Julie Carreras against it is hereby affirmed.

AFFIRMED