968 So.2d 1200 (2007)
Philip N. TAYLOR, Mrs. Geri Taylor, and Ms. Leesa McCarley Plaintiffs-Appellants
v.
Michael HADDOX, individually and d/b/a Village Green Mobile Home Park Defendants-Appellees.
No. 42,557-CA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 2007.
Rehearing Denied November 29, 2007.
Bobby L. Culpepper, Jonesboro, for Appellant, Leesa McCarley.
Wray & Pierce, L.L.P., by Russell W. Wray, Baton Rouge, Dawkins & Carter, APC by Robert G. Dawkins Ruston, for Appellee.
Before BROWN, MOORE, and LOLLEY, JJ.
BROWN, C.J.
This action for damages arises out of a suit brought by Philip and Geri Taylor and Leesa McCarley for damages allegedly sustained by their shared pond due to the neighboring business operations of Michael Haddox. The Taylors dismissed their claim prior to trial, leaving Leesa McCarley as the sole plaintiff. Ms. McCarley has appealed from the trial court's judgment dismissing her action against defendant, Michael Haddox. Finding no error, we affirm.

Facts and Procedural History
Original plaintiffs, Philip and Geri Taylor and Leesa McCarley, own property south of and adjoining property owned by defendant, Michael Haddox. On his property, Haddox operates the Village Green Mobile Home Park. The Taylors' and McCarley's tracts share a pond which they *1202 claimed was damaged by construction on the Haddox property.
On June 1, 2002, defendant commenced clearing 7.08 acres to add 50 mobile home sites. Haddox had removed the existing mechanical waste water treatment plant and replaced it with a new treatment facility consisting of three oxidation ponds in a new location farther away from both the mobile homes and plaintiffs' property. The construction required the removal of pine trees and excavation of the land. Dean Dick was the engineer for the project, and Dusty Taylor was the contractor.
In August of 2002, Mrs. Taylor contacted defendant, complaining that mud and silt ran into the pond due to his operations, resulting in cloudiness and discoloration. Mrs. Taylor then made a report to the Department of Environmental Quality ("DEQ") and the Department of Health and Human Resources ("DHHR"). Michael Stroud, a surveillance employee of DEQ, visited the property for inspection and discovered that Haddox did not have a storm water permit. Defendant claimed that this was an oversight, and applied for a permit, which was denied because the application did not include a storm water prevention plan. A valid permit was finally issued on November 13, 2002. During this period, operations continued, and no sanctions were imposed.
Stroud returned to the site in February of 2003. Stroud stated that he found storm water controls in place which included the placement of hay bales and seeding of the levees. In the spring of 2003, heavy rains inundated the area. Mrs. Taylor contacted Haddox and DEQ regarding storm water runoff. Stroud conducted a walkthrough with defendant, and concluded that the storm water controls had failed. Stroud noted that defendant had not maintained documentation of his inspections as required by DEQ. Kevin Harper, defendant's superintendent, testified by deposition that he had made daily inspections, but had not kept up with his paperwork.
On June 1, 2003, Haddox informed Harper that there appeared to be a leak in the oxidation pond. Defendant decided to make a controlled break in the levee in order to relieve the pressure, fearing a break under pressure could damage the nearest mobile homes, which were approximately twenty feet away. The controlled break released six to eight inches of water into the natural drainage. The leak in the levee was discovered and repaired, and soil was removed and transported to Lincoln Asphalt for use determination.
Following the levee break, Mrs. Taylor and Ms. McCarley noted further discoloration of the pond, and complained of a foul odor. Mrs. Taylor complained to DEQ and the Department of Health and Hospitals ("DHH.") On June 4, 2003, Stroud examined Ms. McCarley's pond and found no visible signs of pollution. Stroud stated that he did not detect any discernible odor at the time. No testing for pollution was performed.
Suit was filed by the Taylors and Ms. McCarley on August 5, 2003, alleging that their property was damaged in the form of contaminated ground around the pond, dead fish, damage to surrounding trees and wildlife, intolerable odors from the pond, and loss of use and enjoyment of the pond.
Testing performed by Red River Laboratories in March of 2005 revealed that the water in the pond was normal for the typical pond in that area. The Taylors requested that their claim be dismissed on March 7, 2005, leaving Leesa McCarley as the lone plaintiff.
Trial on the matter began on December 21, 2005, and was completed on March 3, *1203 2006. The trial court found that defendant used reasonable care to prevent runoff, silting, and pollution. In support of its holding, the trial court specifically noted that Harper made daily inspections of the hay bale placements; that heavy rains during the spring of 2003 were a cause in fact of the runoff which defendant could not have reasonably prevented; and that no evidence was submitted to show that the controlled break in the oxidation pond's levee polluted Ms. McCarley's pond. The court found that the controlled break was an action made in good faith to prevent further damage. Accordingly, the trial court found in favor of Haddox, signing the judgment on September 26, 2006. This appeal followed.

Discussion
Louisiana Civil Code article 667 provides:
Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case. Nonetheless, the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives.
Under the provisions of La. C.C. art. 667, in order for plaintiff to establish liability on the part of defendant, she must prove that defendant failed to exercise reasonable care. Ms. McCarley argues that the trial court erred in finding that Haddox exercised reasonable care in preventing runoff from his operations from polluting her pond. Specifically, plaintiff argues that defendant acted unreasonably by only placing hay bales and seeding the levee to prevent drainage from his property from depositing silt into her pond. In particular, Ms. McCarley lists the following additional precautions Haddox could have taken: vegetative buffer strips, mulching, temporary vegetation, permanent vegetation, sod stabilization, silt fences, earth dikes, settlement traps, check dams, subsurface drains, pipe slope drains, level spreaders, and settlement basins.
An appellate court may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Henderson v. Nissan Motor Corp., 03-606 (La.02/06/04), 869 So.2d 62. The issue to be resolved by the appellate court is not whether the trial court was right or wrong, but whether its conclusion was a reasonable one. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. State, Through Department of Transportation and Development, 617 So.2d 880 (La.1993) Where two permissible views of the evidence exist, the fact-finder's choice between them cannot be manifestly erroneous or clearly wrong. Carr v. Oake Tree Apartments, 34,539 (La.App.2d Cir.05/09/01), 786 So.2d 230.
Plaintiff cites Rizzo v. Nichols, 03-1394 (La.App. 3rd Cir.03/03/04), 867 So.2d 73, a *1204 case in which plaintiff landowner informed defendant of a drainage problem created by his construction project. Defendant in that case consulted two plumbers, but took no action. The obvious distinction between Rizzo and the case at bar, as the trial court noted, is that in the instant case, defendant did not merely consult experts, but took action in the form of laying down hay bales and seeding levees to prevent damage to plaintiff's property. These actions carry the added merit of having had the DEQ's approval.
After fairly listing the many evidential considerations presented at trial and found in the record, the trial court noted certain facts it used in judging the question of the reasonableness of defendant's actions. These facts include: Kevin Harper's testimony that he inspected the hay bale precautions daily; the abnormal strength of the heavy rains that caused some runoff into plaintiff's pond; the lack of evidence that the controlled levee break contributed any pollution to plaintiff's pond; and the DEQ's approval of defendant's measures to prevent runoff and create a controlled break in the levee in order to find and fix the leak.
We may not substitute our opinion of the facts but must consider only whether the trial court's conclusions were reasonable. Carr, supra. We cannot say that the trial court was manifestly erroneous in concluding that defendant exercised reasonable care as required by La. C.C. art. 667; thus, plaintiff's suit must necessarily fail.

Conclusion
For the reasons set forth above, the trial court's dismissal of Leesa McCarley's suit is AFFIRMED. Costs are assessed to plaintiff, Leesa McCarley.
APPLICATION FOR REHEARING
Before BROWN, STEWART, PEATROSS, MOORE and LOLLEY, JJ.
Rehearing denied.