STATE OF LOUISIANA            *        NO. 2019-KA-0709

VERSUS                       *        COURT OF APPEAL

JULIO RUANO                   *        FOURTH CIRCUIT

                             *        STATE OF LOUISIANA

                             *

                             *
                        * * * * * * *


**BELSOME, J., CONCURS WITH REASONS**

I respectfully concur with the majority's opinion; however, I write separately

to discuss the district court's credibility determination. The trial court's judgment

in this case is based on its decision to heavily credit the witnesses' testimonies

concerning their identification of the Appellant. Longstanding case law from this

court demands that courts of appeal give great deference to a trier of fact's factual

findings based on credibility judgments. *See Rosell v. ESCO*, 549 So.2d 840, 845

(La. 1989). *See also Stobart v. State, Dept. of Transp. and Dev.*, 617 So.2d 880,

882 (La. 1993). The principles set forth in *Rosell* have been uniformly affirmed in

numerous cases since it was issued. However, even in *Rosell*, the Louisiana

Supreme Court stated that "[w]here documents or objective evidence so contradict

the witness's story, … that a reasonable fact finder would not credit the witness's

story, the court of appeal may well find manifest error or clear wrongness even in a

finding purportedly based upon a credibility determination." *Id*. Recently, the

Court clarified that principle, stating as follows:

> There is no legitimate conflict in testimony where documents or
> objective evidence so contradict the witness's story, or the story
> presented by the witness is so internally inconsistent or implausible on
> its face, that a reasonable fact-finder could not give credence to the
> witness's testimony. Faced with such circumstances, the court of
> appeal may find manifest error or clear wrongness even in a finding
> purportedly based upon a credibility determination.

1

*Henderson v. Nissan Motor Corp.*, 03-606, pp. 9-10 (La. 2/6/04), 869 So.2d 62, 68-69 (internal citations to *Stobart*, 617 So.2d 880, 882, omitted).

When considering a petition for compensation for wrongful conviction and imprisonment,[1] any relevant evidence is properly considered in the determination of factual innocence. In this case, the issue is whether Appellant proved by clear and convincing evidence that he did not commit "any crime based upon the same set of facts used in his original conviction." La. R.S. 15:572.8;[2] *State v. Ford*, 50,525, p. 8 (La. 2 Cir. 5/18/16), 193 So.3d 1242, 1248. The trial court is not constrained to a sterile examination of the testimony presented at the initial trial as it appears in the record; rather, the entirety of the evidence, whether admitted at the underlying trial or excluded, is properly considered in the determination of factual innocence. *Id.*

In this case, the trial court considered all of the relevant evidence, including the record from trial, the application for post-conviction relief, and the application for compensation for wrongful conviction and imprisonment. After a hearing, the trial court denied the application, finding the eyewitness identifications to be credible. However, a review of the record reveals that the objective evidence

---

[1] There is no dispute that Appellant was convicted, served a five-year sentence, and his conviction was later vacated.

[2] La R.S. 15:572.8 states in pertinent part:

A. A petitioner is entitled to compensation in accordance with this Section if he has served in whole or in part a sentence of imprisonment under the laws of this state for a crime for which he was convicted and:

(1) The conviction of the petitioner has been reversed or vacated; and

(2) The petitioner has proven by clear and convincing scientific or non-scientific evidence that he is factually innocent of the crime for which he was convicted.

B. For the purposes of this Section, "factual innocence" means that the petitioner did not commit the crime for which he was convicted and incarcerated nor did he commit any crime based upon the same set of facts used in his original conviction.

C. All petitions for compensation as provided in this Section shall be filed in the district court in which the original conviction was obtained, hereinafter referred to as "the court", and shall be governed by procedures outlined herein and randomly re-allotted by the court.

D. The court shall render a final decision on all petitions for compensation filed in accordance with the provisions of this Section and shall be tried by the judge alone. **The court may consider any relevant evidence regardless of whether it was admissible in, or excluded from, the criminal trial in which the petitioner was convicted** (emphasis supplied).

2

clearly contradicts the witnesses' testimonies concerning the identification, thus calling the trial court's credibility determination into question.

The record consists of evidence presented by the State and evidence presented by Appellant. As to the State, it presented testimony from the victim and three eye-witnesses, who all identified Appellant as the assailant. The victim, Mr. Terencio Salinas, a Nicaraguan native, testified that after developing a flat tire, he went to MBK Tire Shop to get his flat tire fixed. He further explained that he saw the assailant at the tire shop when he was getting his car fixed. When he returned to his car, he observed a green Jeep Cherokee parked in front of his van and the assailant steeling tools from his van. Upon confronting the assailant, a struggle ensued, wherein he was hit with tire iron, bit, and stabbed with a small pocket knife. Mr. Salinas remembered that there was a small child crying in a baby seat in the back of the vehicle. After the encounter, Mr. Salinas was hospitalized.

In his description of the assailant to Detective Nigel Baddoo, Mr. Salinas stated the assailant was wearing a work shirt with the name "Santos" written on it. Following his release from the hospital, Mr. Salinas, who had recognized that the perpetrator was Hispanic, decided to seek out the perpetrator in places where Hispanic people patronized because the police explained that they would likely not find the assailant since the license plate could not be traced. He testified at trial that he went from "store to store, from football [soccer] camp to football camp, Wal-Mart, any place." Eventually, he identified Appellant at the Union Market in Kenner. He followed Appellant out to his vehicle to see if he was in a green Jeep; however, he was not. He later identified Appellant for a second time in a line-up.

The remaining three eyewitnesses testified relatively consistently with Ms. Salinas's version of the events and identified Appellant as the assailant. Ruben Suazo did not recall seeing a child in the back seat; however, he did write down the license plate number of the Jeep. Yoni Omar Sanchez-Aguilera confirmed that

3

there was a baby crying in the back seat of the vehicle. Aristede Craig, Sr., who stopped to render assistance, called 911 and observed the assailant from approximately twenty feet away. Inexplicably, the trial court did not discuss this crucial witnesses' vantage point.

Significantly, the State did not offer any objective evidence that would place Appellant at the scene of the crime, nor could it offer a motive. A search of Appellants home did not uncover any stolen tools or a work shirt similar to that described by Mr. Salinas. Rather, the photographs of Appellant's numerous tools revealed that Appellant had no motive to steal tools since he had his own. To the contrary, a determined Mr. Salinas had a clear motive to find and identify the person who injured him since the police could not recover any information from the license plate. Likewise, some of the other eyewitnesses had motive to identify Appellant as they were offered assistance with immigration visas in exchange for their cooperation in the case. This information, which formed part of the basis for his application for post-conviction relief, was not disclosed to Appellant until after his conviction. Surprisingly, the trial court made no mention of these facts while weighing the credibility of these eyewitnesses.

Turning to Appellant, his witnesses included himself, Eugenio Santos, Thang Hguyenh, and Hiep Vo, Mr. Escobar, and Dr. Robert Barsley, D.D.S. Appellant testified that on the day of the incident, he worked at Trinity Yacht Company and was also doing some repair/remodeling work at the home of Mr. Vo, his neighbor. He further explained that every day after the work was complete he would drink beer with Mr. Vo. At the time of the assault, Appellant was either at home or at Mr. Vo's home, in Kenner.

In addition, Appellant testified that he did not have any small children or grandchildren on the day of the assault. He also never owned a green Jeep. Mr. Vo and Escobar, who also worked on Mr. Vo's home, both corroborated Appellant's

4

version of events and confirmed he never owned a green Jeep or had any small children or grandchildren.

Further, Thang Hguyenh, the owner of the MBK Tire Shop on Chef Menteur Highway, stated that he did not know the defendant. He also stated that Appellant was not a regular customer. Mr. Hguyenh testified that all of his employees are Hispanic. In addition, Mr. Eugenio Santos testified that he owns Santos Automotive Center, although he is no longer actively involved in running the business. Nevertheless, he stated he knows the employees and that the defendant was not one, nor had he ever been one. To his knowledge, no one had given the defendant a uniform shirt from the shop. Just as Mr. Santos had told the police, his employees stopped wearing any type of uniform shirt after Hurricane Katrina.

Unlike the State, the Appellant admitted scientific and non-scientific objective evidence to prove his innocence. The objective evidence is completely inconsistent with the State witnesses' identifications of the Appellant.

First, in the area of scientific evidence, the uncontroverted bite mark evidence, as explained by Dr. Barsely, excludes the Appellant because his teeth were relatively straight and the assailant had crooked teeth.[3] Moreover, when Appellant stated that he had no involvement with this assault in a polygraph test, the results determined he was being truthful.

Next, pertaining to non-scientific evidence, the Appellant submitted automobile insurance policies, revealing he had three insured automobiles at the time; however, there was no green Jeep. He also admitted his grandchild's birth certificate to establish that his only grandchild was born almost a week after the incident. He further submitted tax returns, bank and loan statements, which

---

[3] While the trial court took notice of the issues raised with bite mark identification, Dr. Barsely explained that this case was one of exclusion so the risks associated with misidentification were not present. He further testified that he had no trouble in excluding Appellant from the photographic evidence, although blurry. He also established that Appellant's bite mark remained relatively the same before and after the assault, which eliminated the potential for a changing bite.

established that he owned two properties, filed his taxes, and had over $100,000.00 line of credit to buy tools, if needed.

In this case, the bite-mark evidence and polygraph test, in conjunction with the fact that there is an absence of evidence that Appellant ever worked at Santos Automotive, owned a green Jeep, cared for a young child, and/or was in possession of or had a motive to steal tools, establishes Appellant's high probability of innocence. Aside from the eyewitness testimony, there was no evidence to link Appellant to this crime, nor was there proof of a motive. Alarmingly, the trial court did not acknowledge any of this exculpatory evidence when ruling.

When considering this evidence as a whole, particularly the objective evidence, a reasonable fact-finder could not give credence to the witnesses' identification of Appellant. Thus, the trial court was manifestly erroneous in its credibility determination. Given that Appellant established his factual innocence by clear and convincing evidence, I would grant his application for compensation and render an award in accordance with the record.